UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OUR MONEY OUR TRANSIT, and ROBERT MACHERIONE,<br><br>                    Plaintiffs,<br><br>     v.<br><br>FEDERAL TRANSIT ADMINISTRATION; PETER M. ROGOFF, in his official capacity as Administrator, Federal Transit Administration; and RICHARD F. KROCHALIS, in his official capacity as Regional Administrator, Federal Transit Administration Region X Office,<br><br>                    Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Our Money Our Transit and Robert Macherione (collectively, "OMOT" or "Plaintiffs") allege the following as their Complaint against Defendants Federal Transit Administration ("FTA"), Peter M. Rogoff, in his official capacity as Administrator of the FTA, and Richard F. Krochalis, in his official capacity as Regional Administrator, FTA Region X (collectively, "Defendants"):

## NATURE OF THE CASE

1. FTA has acted arbitrarily and capriciously in violation of federal law by issuing a Finding of No Significant Impact ("FONSI") for the West Eugene EmX Extension Project ("WEEE" or the "Project").

2. FTA's FONSI is based on faulty and incomplete information that does not provide a clear and concise explanation of the agency's decision-making process and ignores FTA's duty to independently review and evaluate environmental documents.

3. In making its decision, FTA relied exclusively on information provided in an Environmental Assessment ("EA") prepared by the Lane Transit District ("LTD").

4. LTD, the Project's proponent, is heavily invested in the construction of the WEEE and its "locally preferred" alternative. LTD had decided to approve that alternative long before the process of drafting the EA was undertaken.

5. To ensure that its locally preferred alternative was adopted by FTA, LTD predetermined the outcome of the EA analysis by defining the Project's purpose too narrowly to permit meaningful consideration of reasonable alternatives, and by effectively ignoring environmental and community impacts expected to result from the Project.

6. LTD has never articulated an underlying transportation need that justifies any action at all, much less the construction of an 8.8-mile dedicated Bus Rapid Transit ("BRT") lane at a cost of close to $100 million, including $75 million in federal Small Starts funding. Moreover, LTD significantly underestimated the operating costs of the proposed WEEE, while simultaneously overestimating projected ridership and revenues.

7. In addition, LTD's EA inexplicably excludes an alternative that was previously identified in LTD's own Alternatives Analysis Report as the "recommended

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 2

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

alternative." This alternative rated better than the "locally preferred" alternative in nearly every category. Yet, sometime in between publication of the Alternatives Analysis Report and publication of the EA, LTD decided to change its mind, not only adopting a different alternative, but completely excluding the previously recommended alternative from comparative analysis in the EA.

8. Defendants must be prohibited from continuing the West Eugene EmX Extension without undertaking a full assessment of environmental and community impacts as required by the National Environmental Policy Act ("NEPA").

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his duty), and 28 U.S.C. §§ 2201-2202 ("creation of remedy" and "further relief" provisions establishing power to issue declaratory judgments in cases of actual controversy).

10. Plaintiffs have a right to bring this action pursuant to, *inter alia*, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 and 23 U.S.C. § 139(k)-(1). FTA's issuance of the Record of Decision finding no significant impact constitutes final agency action. 78 Fed. Reg. 4,191 (Jan. 18, 2013).

11. Venue is proper in the Western District of Washington under 28 U.S.C. § 1391 because FTA Region X headquarters is located in Seattle, Washington, and the relevant decisions to issue the FONSI and approve the WEEE were made in this District.

12. Plaintiffs have no adequate remedy at law. No monetary damages or other legal remedy can adequately compensate Plaintiffs or its members for the harm caused by Defendants' actions.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 3

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

13. OMOT and its members are adversely affected and aggrieved by Defendants' unlawful approval of the WEEE, and by the adverse environmental effects the WEEE will have on Eugene, Oregon.

14. The WEEE will extend through areas of Eugene where OMOT's members live, and own and operate businesses serving the Eugene community. The WEEE's construction and operation will have severe adverse effects on OMOT and its members.

15. Plaintiff Robert Macherione will be directly and adversely affected by the construction of the WEEE. Plaintiff Macherione works along the proposed WEEE route, and would accordingly suffer injury from the noise, air pollution, vibration, aesthetic and other environmental effects caused by the construction and operation of the WEEE.

16. Plaintiffs also have a substantial interest in ensuring that Defendants' decisions are in conformity with the requirements of law, and in having those requirements properly executed and Defendants' public duties enforced.

17. Defendants' failure to comply with federal law will result in irreparable harm to the environment, OMOT and its members. The relief requested will redress these injuries, in that Plaintiffs seek to enjoin FTA from further action until it complies with federal law.

18. As Plaintiffs have raised issues related to the impacts of the Project on the physical environment, Plaintiffs' interest in this action fall within the zone of interests protected by the laws sought to be enforced in this action.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 4

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

## THE PARTIES

19. Plaintiff OMOT is an association whose members are individuals who live, own property, or own and operate businesses, in Eugene, Oregon and the LTD tax district, including along the proposed WEEE line.

20. Plaintiff Robert Macherione is an individual member of OMOT and a resident of Eugene, Oregon who owns and operates a business at 288 West 6th Avenue, along the proposed route of the WEEE.

21. OMOT, along with its members, actively participated in the WEEE's administrative process by providing written and oral comments and proposing alternative solutions to reduce and/or eliminate the significant environmental impacts that will be imposed upon them by the WEEE.

22. Defendant FTA is a federal government agency within the U.S. Department of Transportation. FTA's role includes the planning and implementation of new transit infrastructure and improvements to existing infrastructure.

23. FTA is the federal agency charged with approving projects for funding under the New Starts program, which is the primary federal funding mechanism for locally planned, implemented, and operated transit projects, including the WEEE.

24. Regional FTA Offices prepare and participate in the environmental review of federally funded projects and have review authority for the final action decision. FTA is the lead agency for the Project with regard to NEPA and is charged with the duty of ensuring compliance with NEPA.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 5

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

25. LTD, which prepared the EA on which FTA relied (*see, eg.*, 23 C.F.R. § 771.109(c)), issued the EA in July 2012. FTA independently issued the Record of Decision ("ROD") finding no significant impact on December 20, 2012.

26. Defendant Peter M. Rogoff is the Administrator of FTA, and he is responsible for all FTA activities. Defendant Rogoff is sued in his official capacity.

27. Defendant Richard F. Krochalis is the Regional Administrator of FTA's Region X Office and is the FTA official responsible for issuance of the ROD. Defendant Krochalis is sued in his official capacity.

## STATUTORY AND REGULATORY BACKGROUND

National Environmental Policy Act ("NEPA")

28. NEPA requires federal agencies undertaking any major federal action to review the environmental impacts of the proposed action and to "study, develop, and describe appropriate alternatives to recommended courses of action." 42 U.S.C. § 4332(2)(C), (E).

29. NEPA's purpose is two-fold: first, to ensure that federal agencies undertaking a major federal action take a hard look at the proposed project's environmental impacts before deciding how to proceed, and, second, to ensure that relevant information about the impacts of a proposed project and its alternatives is made available to members of the public to provide the public with a meaningful opportunity for public comment and participation in the federal decision-making process.

30. The Council on Environmental Quality ("CEQ") has promulgated regulations applicable to all federal agencies undertaking a NEPA review. 40 C.F.R. Part 1500. Individual agencies supplement the CEQ regulations with agency-specific

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 6

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

regulations, and the NEPA regulations applicable to FTA are set forth in 23 C.F.R. Part 771.

31. The CEQ regulations direct federal agencies to "[u]se the NEPA process to identify and assess the reasonable alternatives to proposed actions that will avoid or minimize adverse impacts of these options upon the quality of the human environment." 40 C.F.R. § 1500.2(e).

32. Essential to an agency's obligations under NEPA is the duty to insure that "high quality" environmental information is available to the public before decisions are made and before actions are taken. *Id*. at § 1500.1(b). Agencies are to "[m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures." *Id*. at § 1506.6(a).

33. Although the CEQ NEPA regulations authorize coordination between federal agencies subject to NEPA and state and local agencies (*id*. at § 1506.2(a)), both CEQ and FTA regulations require the lead federal agencies to independently evaluate and take responsibility for information considered in the environmental review. *Id*. at § 1506.5; 23 C.F.R. § 771.109(c)(1)-(2).

34. The purpose of an EA is to enable the agency to determine whether preparation of an EIS is necessary, or whether the agency may properly conclude that the action will not have a significant effect on the environment. *Id.* at § 1508.9.

35. An agency preparing an EA must discuss the need for the proposal, a discussion of all reasonable alternatives to the proposal, and a discussion of the impacts of the proposed action and alternatives. *Id.* at § 1508.9(b).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 7

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

36. If the agency determines, based on an EA, that no EIS is needed because its action would not significantly affect the environment, either directly, indirectly, or cumulatively, it may then prepare a Finding of No Significant Impact ("FONSI"). *Id.* at §§ 1504.1(e), 1508.13, 1502.16, 1508.27(b)(4)-(5).

37. A FONSI must present the reasons why an action will not have a significant effect on the human environment. 40 C.F.R. § 1508.13.

38. When FTA issues a FONSI, its own regulations and CEQ guidance require that measures necessary to mitigate adverse impacts be incorporated into the action. 23 C.F.R. § 771.105(d); 76 Fed. Reg. 3,843 (Jan. 21, 2011).

39. The FTA regulations provide that the agencies should evaluate alternatives and make decisions "in the best overall public interest based upon a balanced consideration of the need for safe and efficient transportation; of the social, economic, and environmental impacts of the proposed transportation improvement; and of national, State, and local environmental protection goals." 23 C.F.R. § 771.105(b).

SAFETEA-LU: Small Starts Program

40. The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") provides a mechanism, known as the Small Starts Program, for federal funding of locally planned, implemented, and operated major transit capital investments. Pub. L. 109-59, Aug. 10, 2005; 49 U.S.C. § 5309(e).

41. Small Starts projects are defined as projects requesting under $75 million in Section 5309 Capital Investment Grant funding with a total cost of less than $250 million. 49 U.S.C. at § 5309(a)(7).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 8

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

42. Under SAFETEA-LU, FTA may only provide Small Starts funding for a project if FTA finds that the project is based on the results of planning and Alternatives Analysis; justified based on a review of its public transportation-supportive land use policies, cost-effectiveness, and effect on local economic development; and supported by an acceptable degree of local financial commitment. *Id.* at § 5309(e)(2).

43. FTA's Reporting Instructions for the Section 5309 Small Starts Criteria provide that "the cost-effectiveness measure used in Small Starts project evaluation and rating is based on a comparison between the proposed Small Starts project and a baseline alternative." A Transportation System Management ("TSM") alternative "typically constitutes the Baseline alternative." U.S. Department of Transportation, Federal Transit Administration, Reporting Instructions for the Section 5309 Small Starts Criteria (August 2011).

44. SAFETEA-LU requires that the proposed local source of capital and operating financing must be determined to be stable, reliable, and available within the proposed project schedule. 49 U.S.C. § 5309(e)(5)(A).

Administrative Procedure Act ("APA")

45. The Administrative Procedure Act, 5 U.S.C. §§ 701-706, provides for judicial review of federal agency actions such as those at issue here.

46. The APA requires a reviewing court to hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

Declaratory Judgment Act

47. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, authorizes "any court of the United States" to "declare the rights and other legal relations of any interested party seeking such declaration."

## FACTUAL AND PROCEDURAL BACKGROUND

48. The Emerald Express ("EmX") is a BRT system serving the communities of Eugene and Springfield in Lane County, Oregon.  EmX consists of special buses that are not interoperable with other buses in the fleet.  EmX buses can drive on any road, but can only serve customers at high-platform stations.  Thus, EmX buses can run in service only on the EmX infrastructure.

LTD's WEEE Proposal

49. During the summer of 2007, the LTD proposed to address allegedly growing traffic congestion by extending the EmX system into the West 11th Avenue corridor of Eugene.  This project became known as the West Eugene EmX Extension, or WEEE.

50. LTD has requested $74.9 million in project funding for the WEEE from FTA's Small Starts program—the maximum amount of funding that can be granted under that program.

51. FTA published a Notice of Intent ("NOI") for the WEEE project in the Federal Register on September 18, 2007.  77 Fed. Reg. 53,281 (Sept. 18, 2007).  The NOI stated that an EIS would be required for the WEEE project.

Alternatives Analysis Report

52. During 2008 and 2009, LTD and FTA worked with a number of government agencies to develop the scope and range of alternatives that would be evaluated by the EIS.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 10

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

An Alternatives Analysis considering 10 Bus Rapid Transit alternatives, a Transportation System Management alternative, and a No-Build alternative was performed in 2010.

53.     The Alternatives Analysis Report that resulted from LTD and FTA's 2010 alternatives analysis recommended a route running directly down West 13th and West 11th Avenues (the "West 13th – West 11th Avenue Alignment").

54.     In January 2011, representatives from the Metropolitan Policy Committee, the Eugene City Council, and the LTD Board of Directors (the "Joint LPA Committee") recommended the West 13th – West 11th Avenue Alignment as the Locally Preferred Alternative.

Adoption of a New Locally Preferred Alternative

55.     In response to what it characterized as strong public opposition to the West 13th – West 11th Avenue Alignment, the Joint LPA Committee subsequently reversed course and recommended instead that LTD consider two alternatives: the West 13th – West 11th Avenue Alignment and a second route running through the West 11th Avenue Corridor to a proposed terminus station at Commerce Street via West 6th and West 7th Avenues (the "West 6th/7th Avenues – West 11th Avenue Alignment").

56.     In May 2011, the Joint LPA Committee selected the West 6th/7th Avenues – West 11th Avenue Alignment as the Locally Preferred Alternative.  LTD then presented changes to FTA and proposed that the new alignment would no longer require an EIS.  On May 11, 2011, FTA accepted LTD's proposal.

57.     In December 2011, LTD commissioned a review of the WEEE from an independent expert with twenty years of experience in transit planning.  The resulting report, issued on April 19, 2012, identified "the recommended alternative" as a BRT line

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 11

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

running directly down West 11th and West 13th Avenues, which it concluded would have significant advantages over the West 6th/7th Avenues – West 11th Avenue Alignment.

58. LTD's EA ignored the recommendations in the expert report and instead adopted LTD's Locally Preferred Alternative. The EA was published on July 16, 2012.

Purpose and Need in the EA

59. According to the EA, "the purpose of the proposed WEEE project is to implement high-capacity public transportation service, in the West 11th Corridor (east/west), utilizing the adopted high capacity transit mode identified in the Regional Transportation Plan, that is less hindered by congestion and that provides efficient, effective, dependable and visually appealing service throughout the life of the project."

60. The EA's stated purpose effectively requires that an alleged need to address growing traffic congestion be satisfied by "high-capacity public transportation service," without allowing for consideration of other ways to address traffic congestion issues.

61. The EA fails to state the alleged need for the WEEE project in plain, understandable terms, and fails to demonstrate that there is any substantial need for the WEEE at all.

Alternatives Considered in the EA

62. Despite its stated purpose of implementing public transportation service in the West 11th Corridor, the EA did not include any discussion of the West 13th – West 11th Avenue Alignment that was identified as the "recommended alternative" in the Alternatives Analysis Report, and found to be superior in the April 2012 independent expert report commissioned by LTD.

63. LTD's EA examined only two alternatives: a No-Build Alternative and the "Locally Preferred Alternative."

64. The EA identified the "Locally Preferred Alternative" as the West 6th/7th Avenues – West 11th Avenue Alignment.

65. The EA concluded that the Locally Preferred Alternative would not result in any significant adverse impacts.

66. The EA does not fully evaluate other reasonable alternatives, such as alternative modes of transportation, alignment alternatives, and the TSM Alternative. Instead, the EA dismisses these alternatives from consideration but does not provide further explanation or supporting documentation for their elimination.

Affected Environment and Environmental Consequences

67. The EA concludes that the Locally Preferred Alternative is "consistent with regional, state and local land use plans and policies supportive of transit" and "provides a basis for future nodal development within the study area" and that "EmX stations and pedestrian improvements will help promote compact, pedestrian-oriented development."

68. The EA projects a modest increase of 3,287 jobs and an increase of 2,143 people within a half mile of the proposed BRT stations by 2031. The EA does not explain the relationship between the large scale of the BRT investment and the small amount of planned population and employment growth within a half mile of the proposed BRT corridor.

69. Many areas north of the westbound line are designated for light-medium industrial and heavy industrial in the Metro Plan. The EA does not assess potential adverse

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 13

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

impacts to these areas or the land use plan policies that support their continued viability and utilization for industrial jobs.

70. The EA does not address impacts of the addition of a third BRT route on freight movement. Unlike the "preferred alternative" selected by the Alternatives Analysis Report, the Locally Preferred Alternative route includes a designated freight route on the National Highway System. The WEEE does not provide an analysis on how the removal of general purpose lanes on 6th and 7th Avenues, as required by the Project, will impact heavy vehicle traffic.

71. The Locally Preferred Alternative is expected to result in 117 partial property acquisitions, two full property acquisitions, the elimination of 72 off-street parking spaces, and the displacement of at least two businesses. The EA acknowledges that businesses and residences near the proposed extension are likely to experience adverse effects as a result of construction, but it does not explain how those impacts will be mitigated.

72. LTD specifically admits that one of the two businesses that will be shut down by the WEEE is minority-owned, but the EA, relying exclusively on the Disadvantaged Business Enterprise program, concludes that minority-owned businesses would not suffer significant harm.

73. The EA concludes that there will be no significant adverse impacts on visual and aesthetic qualities associated with the Locally Preferred Alternative even though it acknowledges that a significant number of mature street and landscape trees will be removed for the project.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 14

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

74. Under the Locally Preferred Alternative, the functional classification of Charnelton Street will be changed. Charnelton is currently classified as a local street, but, under the Locally Preferred Alternative, major portions of the street will be used primarily for regional transportation purposes. The EA does not analyze the impacts of this change.

75. The EA does not address the environmental effects of the utility relocation that would be necessary for construction of the WEEE, including the cost of such relocation and the adverse impacts of moving utility lines further into the right-of-way or above buildings.

76. The EA states that the WEEE would "advance the City's land use plans for increased density and development" in areas designated for "nodal development." However, the EA does not include an evaluation of the environmental impacts of that expected development.

77. The EA acknowledges that mitigation measures would be necessary to address certain significant impacts of the Locally Preferred Alternative, including impacts on parking, noise and vibration, geology and seismic activity, and wetlands. However, the EA does not specify what mitigation will be performed and does not make any firm commitments to planned mitigation measures.

Costs and Financial Analysis

78. The financial forecasts presented in the EA contain a variety of inconsistencies. The realities of funding the WEEE Project could threaten the viability of the entire public transit system under the Lane Transit District's authority.

79. LTD forecasts, based on an expected 810 BRT miles and 770 bus miles per weekday, that per mile operating costs of the WEEE will be only $2.53. However, the EA

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 15

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

does not address the costs of providing 770 miles per day of bus service in addition to the 810 miles per day of BRT service.

80. Additionally, system-wide costs at LTD have risen from $5.12 per mile in 2001 to $9.43 per mile in 2010. The EA does not explain why BRT costs are so much lower per mile than the rest of the system or why costs for the system as a whole will not continue to rise. Nor does the EA provide an explanation as the cause of the recent cost increases.

81. LTD forecasts a surplus of $9.5 million over twenty years. That amount makes up only 0.8% of total revenues. However, the EA does not analyze possible unexpected variations in cost and revenue during that twenty-year period. Notably, the most recently added EmX line has fallen short of its ridership projections by 5.7%.

82. On December 20, 2012, FTA, relying on the EA, issued a Finding of No Significant Impact ("FONSI") for the WEEE project. Notice of this final agency action was published on January 18, 2013. 78 Fed. Reg. 4,191 (Jan. 18, 2013).

## CLAIMS FOR RELIEF

### COUNT ONE – VIOLATIONS OF NEPA AND ITS IMPLEMENTING REGULATIONS AND THE APA: FAILURE TO ADEQUATELY ASSESS AND DISCLOSE ENVIRONMENTAL IMPACTS OF THE PROJECT AND ITS ALTERNATIVES

83. Plaintiffs hereby incorporate by reference and reallege each and every allegation of the Paragraphs above.

84. Defendants violated NEPA and its implementing regulations, 40 C.F.R. Part 1500 and 23 C.F.R. Part 771, and the APA because, among other things, they:

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 16

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

      a)      Failed to take the requisite "hard look" at the environmental impacts of the proposed Project and available alternatives;

      b)      Failed to use plain language in the EA's description of the project, its purpose and need, alternatives, and environmental effects;

      c)      Employed a purpose and need for the project that inappropriately limited the alternatives being considered;

      d)      Failed to articulate a substantial need for the WEEE Project;

      e)      Included incomplete information regarding significant adverse impacts, including those related to industrial areas, freight movement, and local businesses;

      f)      Failed to adequately address the West 13th – West 11th Avenue Alignment as a reasonable alternative;

      g)      Failed to adequately account for the impact the Project will have on the surrounding community, including the increased density and development expected to occur as a result of the Project;

      h)      Failed to explain in the FONSI why the environmental effects of the WEEE do not qualify as significant, and thus require preparation of an EIS; and

      i)      Pre-judged the outcome of the environmental impact review.

85.    Defendants acted arbitrarily and capriciously in approving the Project based on a factual record that contains both questionable data and gaping omissions.

86.    Such actions were arbitrary, capricious, and an abuse of discretion in violation of NEPA, its implementing regulations, and the APA.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 17

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

## COUNT TWO – VIOLATIONS OF SAFETEA-LU AND THE APA

87. Plaintiffs hereby incorporate by reference and reallege each and every allegation of the Paragraphs above.

88. Defendants violated SAFETEA-LU and the APA by approving the West Eugene EmX Extension for federal funding under the Small Starts Program, which was arbitrary, capricious, and not in accordance with law, because:

    a. Numerous key financial questions about the Project were not addressed by the EA, meaning that the Project is unable to satisfy the cost-effectiveness criteria;

    b. LTD has not demonstrated that the Project will change land use through nodal development in a manner consistent with regional planning documents; and

    c. LTD did not include an adequate baseline alternative when evaluating the proposed Project.

89. Such approval was arbitrary, capricious, and an abuse of discretion in violation of SAFETEA-LU and the APA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court grant the following relief:

A. Declare that Defendants violated NEPA, SAFETEA-LU, and the APA by issuing a FONSI for the WEEE Project;

B. Declare that the EA and FONSI are arbitrary and capricious, contrary to law, and invalid;

1   C. Order that the Record of Decision dated December 20, 2012 be vacated, set aside, and/or rescinded;

D. Issue an injunction requiring that Defendants take no further actions toward proceeding with the WEEE Project until they have fully complied with NEPA, SAFETEA-LU, and their implementing regulations;

E. Issue an injunction prohibiting the FTA from obligating SAFETEA-LU Small Starts funds to the Project until FTA has fully complied with the provisions of NEPA and SAFETEA-LU;

F. Award Plaintiffs the costs of this action, including their reasonable attorneys' fees; and

G. Grant Plaintiffs such further and additional relief as this Court deems just and proper.

DATED:  June 11, 2013.

**YARMUTH WILSDON PLLC**

By *s/ Kristina S. Bennard*
Kristina S. Bennard, WSBA No. 37291
818 Stewart Street, Suite 1400
Seattle, WA  98101
Telephone:   206.516.3831
Email:         kbennard@yarmuth.com

**VENABLE LLP**

Kathryn Kusske Floyd (*pro hac vice* to be filed)
Jay C. Johnson (*pro hac vice* to be filed)
Margaret K. Kuhn (*pro hac vice* to be filed)
575 7th Street, N.W.
Washington, D.C. 20004
Telephone:   202.344.4000
Email:         kkfloyd@venable.com
                   jcjohnson@venable.com
                   mkkuhn@venable.com

*Attorneys for Plaintiffs Our Money Our Transit and Robert Macherione*

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF – Page 19

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888