1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OUR MONEY OUR TRANSIT, *et al.*,

                    Plaintiffs,

        v.

FEDERAL TRANSIT
ADMINISTRATION, *et al.*,

                    Defendants

        and

LANE TRANSIT DISTRICT,

                    Intervenor-
                    Defendant.

No. 2:13-cv-01004-TSZ

**PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM
OF LAW**

**NOTED ON MOTION CALENDAR:
April 25, 2014**

*Oral Argument Requested*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    Statutory and Regulatory Background ........................................................... 2

    B.    LTD's Initial Project Development and Review of Alternatives ................... 3

    C.    Environmental Review Process .................................................................... 4

ARGUMENT ................................................................................................................. 6

    A.    FTA violated NEPA by failing to examine the West 13th-West 11th
           Avenues route as part of the EA's alternatives analysis. ............................... 6

    B.    The EA's statement of purpose and need violates NEPA ........................... 10

          1.    The narrowness of the purpose and need statement caused the
                 exclusion of the otherwise reasonable Transportation System
                 Management alternative. .................................................................. 10

          2.    The WEEE simply is not needed. .................................................... 12

    C.    The EA's discussion of environmental effects and mitigation is
           inadequate to support FTA's FONSI. .......................................................... 13

          1.    The EA and FONSI fail to incorporate specific or defined
                 mitigation measures that can adequately support a FONSI. ............. 14

          2.    The EA omits information concerning significant
                 environmental effects. ..................................................................... 17

                a.    The EA fails to adequately address the WEEE's
                     effects on transit. .............................................................. 17

                b.    The EA fails to assess foreseeable impacts of expected
                     nodal development. ............................................................. 19

                c.    The EA fails to provide an analysis of proportional
                     effects on minority populations. ......................................... 20

CONCLUSION ............................................................................................................ 21

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – i
No. 2:13-CV-01004-TSZ

YARMUTH  WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

# TABLE OF AUTHORITIES

**Cases**

*Blue Mountains Biodiversity Project v. Blackwood,*
   161 F.3d 1208 (9th Cir. 1998) ................................................................. 9, 14

*Chelsea Neighborhood Ass'n v. U.S. Postal Serv.,*
   516 F.2d 378 (2d Cir. 1975) ......................................................................... 13

*Churchill County v. Norton,*
   276 F.3d 1060 (9th Cir. 2001) ..................................................................... 12

*Idaho Sporting Congress v. Thomas,*
   137 F.3d 1146 (9th Cir. 1998) ................................................................ 14, 15

*'Ilio'ulaokalani Coal. v. Rumsfeld,*
   464 F.3d 1083 (9th Cir. 2006) ....................................................................... 2

*Marsh v. Oregon Natural Resources Council,*
   490 U.S. 360 (1989) ........................................................................................ 6

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010) ...................................................................................... 15

*N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.,*
   545 F.3d 1147 (9th Cir. 2008) ....................................................................... 6

*National Parks & Conservation Ass'n v. Babbitt,*
   241 F.3d 722 (9th Cir. 2001) ....................................................................... 15

*National Parks & Conservation Assn. v. Bureau of Land Mgmt.,*
   606 F.3d 1058 (9th Cir. 2009) ..................................................................... 10

*Natural Resources Def. Council v. Hughes,*
   437 F. Supp. 981 (D.D.C. 1977) .................................................................. 13

*Neighbors of Cuddy Mtn. v. U.S. Forest Service,*
   137 F.3d 1972 (9th Cir. 1998) ..................................................................... 15

*Simmons v. U.S. Army Corps of Engineers,*
   120 F.3d 664 (7th Cir. 1997) ....................................................................... 11

*The Lands Council v. McNair,*
   537 F.3d 981 (9th Cir. 2008) ....................................................................... 14

*Western Watersheds Project v. Abbey,*
   719 F.3d 1035 (9th Cir. 2013) ......................................................... 3, 6, 8, 10

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – ii
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

**Statutes**

42 U.S.C. § 4321 ........................................................................................................... 2

42 U.S.C. § 4332(2)(C) ................................................................................................. 2

5 U.S.C. § 706(2) .......................................................................................................... 6

**Regulations**

23 C.F.R. § 771.105(d) ............................................................................................... 14

40 C.F.R. § 1500.1(a) ................................................................................................... 2

40 C.F.R. § 1502.14 ...................................................................................................... 6

40 C.F.R. § 1508.9 ........................................................................................................ 2

40 C.F.R. § 1508.9(a)(1) ............................................................................................. 13

40 C.F.R. § 1508.27 .................................................................................................... 14

**Other Authorities**

62 Fed. Reg. 18377 (April 15, 1997) ........................................................................ 20

72 Fed. Reg. 53281 (Sept. 18, 2007) .......................................................................... 3

76 Fed. Reg. 3843 (Jan. 21, 2011) ............................................................................ 14

FTA, Updated Interim Guidance on Small Starts, *available at*
http://www.fta.dot.gov/12304_9055.html ................................................................... 2

*LTD Cuts 20 Percent of Bus Service, at* http://www.kval.com/news/91854329.html
(April 22, 2010) .......................................................................................................... 13

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – iii
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Pursuant to Fed. R. Civ. P. 56, and for the reasons set forth in the incorporated memorandum of law, Plaintiffs Our Money Our Transit and Robert Macherione respectfully file this motion for summary judgment.

## INTRODUCTION

The shortest distance between two points is a straight line—unless, apparently, the one performing the measurement is a public transit agency.  In this case, Defendants were faced with a choice between two basic routes for a Bus Rapid Transit project.  They evaluated those routes using a number of criteria and concluded that one was significantly faster, cheaper and less likely to adversely affect the environment.  Then they chose the other route.  More importantly for purposes of this case, Defendants completely excluded the demonstrably superior route from their National Environmental Policy Act ("NEPA") evaluation.  That omission strikes at the heart of NEPA's procedural requirements and cannot be allowed to stand.

Although Defendants' decision to limit their environmental review to their lone preferred alternative is by itself enough to warrant judgment in Plaintiffs' favor, it is far from the only NEPA violation Defendants committed in this case.  Rather than considering a range of options that could have helped resolve alleged traffic problems, Defendants improperly crafted a project purpose that made the selection of their preferred Bus Rapid Transit alternative inevitable.  Rather than preparing a detailed Environmental Impact Statement assessing the effects of their project, Defendants have impermissibly relied on vague mitigation measures to support their conclusion that the project will not have a significant impact on the environment.  And rather than taking a hard look at serious environmental problems related to traffic, land use and environmental justice, Defendants have tried to get by with an incomplete environmental analysis.  Any one of these errors renders Defendants' decision to move forward with their proposed Bus Rapid Transit extension arbitrary and capricious.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 1
No. 2:13-CV-01004-TSZ

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

**BACKGROUND**

**A.      Statutory and Regulatory Background**

Intervenor-Defendant Lane Transit District ("LTD")'s proposed 8.8-mile round trip extension to its Bus Rapid Transit system is projected to cost $95.6 million—nearly $11 million per mile.  AR0115158 – AR0115159.  To pay this exorbitant price tag, LTD plans to seek $74.5 million in federal funding under Defendant Federal Transit Administration ("FTA")'s Small Starts program.  AR0115159.  Small Starts authorizes grants of up to $75 million for certain new fixed guideway or corridor-based bus projects.  FTA, Updated Interim Guidance on Small Starts, *available at* http://www.fta.dot.gov/12304_9055.html.  Because the provision of almost $75 million to LTD for the construction of its proposed West Eugene Emx Extension ("WEEE") would qualify as a "major federal action," FTA was obligated to consider the environmental effects of that action under NEPA.  42 U.S.C. § 4321, *et seq.*

NEPA is the "basic national charter for protection of the environment."  40 C.F.R. § 1500.1(a).  The application of NEPA and its implementing regulations is intended to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken."  *Id.* § 1500.1(b).  By requiring an environmental study in advance of any "major federal action," NEPA forces federal decision-makers to "carefully weigh environmental considerations and consider potential alternatives to the proposed action" prior to undertaking a project.[1]  *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1093 (9th Cir. 2006) (citation omitted).  When a federal agency fails to comply with NEPA by, for example, omitting a reasonable alternative from its study, or failing to take a hard look at environmental effects, courts will require the agency

---

[1] Although NEPA requires preparation of an Environmental Impact Statement any time a proposed project will "significantly affect" the environment (42 U.S.C. § 4332(2)(C)), agencies may in some cases take the preliminary step of preparing a less-detailed Environmental Assessment to decide whether the environmental effects of a proposed action cross the threshold of significance.  40 C.F.R. § 1508.9.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 2
No. 2:13-CV-01004-TSZ

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    to fulfill its NEPA obligations before the project moves forward.  *See Western Watersheds*

2    *Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013).

3    **B.    LTD's Initial Project Development and Review of Alternatives**

4            The WEEE would be an extension of LTD's existing Bus Rapid Transit system,

5    known as the Emerald Express ("EmX"), which serves the communities of Eugene and

6    Springfield, Oregon.  AR0118825.  The EmX employs special buses that are not

7    interoperable with other buses in the LTD fleet.  AR0118822-AR0118823.  Although EmX

8    buses can drive on any road, they can serve customers only at special high-platform

9    stations.  *Id.*  Consequently, EmX buses can provide service only within the EmX

10   infrastructure.  *Id.*

11           The Eugene City Council and LTD Board of Directors began considering the WEEE

12   in 2007.  AR0118825.  Their idea was to use FTA Small Starts funding to bring Bus Rapid

13   Transit to West Eugene by extending the EmX along the West 11th Avenue Corridor—the

14   primary east/west transit corridor linking the west side of Eugene to the downtown area.

15   *Id.*; AR0118805.  Apparently recognizing that the WEEE was a major federal action that

16   could have significant environmental effects, FTA published a notice of intent to prepare an

17   Environmental Impact Statement ("EIS") in the September 18, 2007 issue of the Federal

18   Register.  72 Fed. Reg. 53281 (Sept. 18, 2007).  Soon thereafter, FTA and LTD refined the

19   purpose and need for the project and began developing and screening alternatives.

20   AR0082125.

21           On March 19, 2008, the LTD Board of Directors formally adopted a statement of

22   purpose and need for the WEEE, which provides in relevant part that "[t]he Purpose of the

23   [WEEE] is to implement high-capacity public transportation service . . . utilizing the

24   adopted high-capacity transit mode identified in the Regional Transportation Plan, that is

25   less hindered by congestion and that provides efficient, effective, dependable, and visually

26   appealing service throughout the life of the project."  AR0052649.  For the next year, LTD

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 3
No. 2:13-CV-01004-TSZ

YARMUTH  WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    developed a number of different conceptual designs for review in a formal "Alternatives

2    Analysis" process.  AR0082126.  In January 2010, LTD began a technical review designed

3    to compare 10 Bus Rapid Transit alternatives, a no-action alternative, and a Transportation

4    System Management ("TSM") alternative that would enhance existing bus service with

5    lower-cost improvements.  AR0082126; AR0052649 – AR0052650.

6         LTD published the results of its initial technical review in a draft Alternatives

7    Analysis Report that was released in October 2010.  AR0082130.  That report identified a

8    route along West 11th and West 13th Avenues as substantially superior to the other

9    alternatives, concluding that "[f]rom a technical perspective, the West 13th Avenue –West

10   11th Avenue Alternative *performs best* and is the *recommended alternative*."  AR0053037

11   (emphasis added).  As a result, this route was recommended for selection as the Locally

12   Preferred Alternative ("LPA") in January 2011—a designation intended to signal LTD's

13   preference for that route above the other options studied in the Alternatives Analysis

14   Report.  AR0118730.

15   **C.    Environmental Review Process**

16        When LTD and FTA prepared an Environmental Assessment ("EA") in 2012 to

17   fulfill their obligations under NEPA, they failed to mention that the West 13th-West 11th

18   Avenue Alternative was the "recommended alternative" in the Alternatives Analysis

19   Report.  Instead, the EA casually states that in May 2011, certain "decision-making bodies"

20   had "eliminated" this recommended alternative and instead identified a route along West

21   6th Avenue and West 7th Avenue as the LPA.  AR0082130 – AR0082131.  Moreover, the

22   West 6th-West 7th Avenues LPA was the *only* action alternative that FTA and LTD

23   included in the EA.  They completely excluded the technically superior West 13th-West

24   11th Avenues route and the TSM alternative from the NEPA process.  *Id.*

25        At the same time the "decision-making bodies" were excluding the technically

26   preferred West 13th-West 11th Avenues route from the NEPA review, LTD was also

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 4
No. 2:13-CV-01004-TSZ

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1   approaching FTA about significant changes to that review.  In April 2011, LTD informed

2   FTA that it had selected the West 6th-West 7th Avenue alternative as the LPA, and had

3   made certain design modifications in an effort to avoid or minimize the project's

4   environmental effects.  AR0052705; AR0053527 – AR0053592.  Based on LTD's

5   presentation, FTA agreed that it could initiate the NEPA process by preparing an EA, rather

6   than the more detailed (and time-consuming) EIS that had been announced in FTA's 2007

7   Federal Register notice.  *Id*.; AR0053497 – AR0053498.

8        FTA and LTD's EA for the WEEE was noticed for public comment in July 2012.

9   Although the EA acknowledged the potential for significant environmental effects on

10  several different resources (AR0082094 – AR082101), it concluded that those effects

11  would be mitigated below the level of significance (AR0082094).  The EA went on to

12  compare the merits of two alternatives—constructing the WEEE along West 6th Avenue

13  and West 7th Avenue, and a no action alternative that would not make significant changes

14  to the existing transit system.  AR0082131.  Using the same measures of effectiveness

15  employed by the Alternatives Analysis Report (AR0082365 – AR0082366), the EA

16  concluded that the West 6th-West 7th Avenues route was superior to no action.

17  AR0082387.  The vast majority of the nearly 300 submissions made during the public

18  comment period for the EA opposed the WEEE.  AR0115160 – AR0115161; AR0078875 –

19  AR0080465.

20       In December 2012, FTA Region X issued a Finding of No Significant Impact

21  ("FONSI") for the WEEE.  FTA's FONSI contained an appendix specifying mitigation

22  measures for, among other things, adverse effects on traffic, landowners, noise and

23  vibration, water resources and wetlands.  AR0115284 – AR0115301.  FTA concluded that

24  "the proposed project, with the mitigation that is required [by the FONSI], will have no

25  significant adverse impact on the environment."  AR0115163; AR0115152.  The agency

26  accordingly determined that preparation of an EIS was not required.  AR0115163.  Notice

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 5
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1  of this final agency action appeared in the Federal Register on January 18, 2013.

2  AR0114559.

**ARGUMENT**

4    If a party believes that an agency has breached its responsibilities under NEPA, it

5  may seek judicial review pursuant to the Administrative Procedure Act ("APA"), which

6  allows a court to set aside an agency decision under NEPA that was "arbitrary, capricious,

7  an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).

8  Although the APA's standard of review is deferential, it still requires a careful examination

9  of the administrative record to determine whether the agency took a "hard look" at the

10  environmental consequences of its proposed action.  *Marsh v. Oregon Natural Resources*

11  *Council*, 490 U.S. 360, 378 (1989) (citation omitted).  If the agency's decision was not

12  "founded on a reasoned evaluation of the relevant factors," that decision will be vacated.

13  *See id.*

14  **A.** **FTA violated NEPA by failing to examine the West 13th-West 11th Avenues**

15    **route as part of the EA's alternatives analysis.**

16    Consideration and comparison of alternatives is the heart of the analysis required by

17  NEPA.  40 C.F.R. § 1502.14.  Because of its central importance to the statutory scheme,

18  "NEPA's requirement that agencies 'study, develop, and describe appropriate alternatives

19  . . . applies whether an agency is preparing an EIS or an EA.'"  *Western Watersheds*

20  *Project*, 719 F.3d at 1050 (brackets omitted) (quoting *N. Idaho Cmty. Action Network v.*

21  *U.S. Dep't of Transp.*, 545 F.3d 1147, 1153 (9th Cir. 2008)).  Preparing an EA allows an

22  agency to write a less detailed description of alternatives, but the agency "must still give

23  full and meaningful consideration to all reasonable alternatives."  *Id.* (citation and internal

24  quotation marks omitted).  For that reason, "[t]he existence of a ***viable but unexamined***

25  ***alternative*** renders an EA ***inadequate***."  *Id.* (emphasis added) (brackets and citation

26  omitted).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 6
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

There is unquestionably a "viable" alternative in this case that is completely "unexamined" in the EA.  The EA studies just two alternatives: (1) a No-Build Alternative, and (2) the expansion of the EmX Bus Rapid Transit service along West 6th and West 7th Avenues.  Astoundingly, the EA does not consider the potential environmental effects of the West 13th-West 11th Avenues route that LTD originally identified as the "preferred alternative" after the exhaustive study documented in the Alternatives Analysis Report.  The obvious viability of the West 13th-West 11th Avenues route is illustrated by the maps below.

<u>West 13th-West 11th Avenues Alternative</u>



Figure 2.10B. West 13th Avenue - West 11th Avenue Alignment Alternative Roadway Improvements

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 7
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

<u>West 6th-West 7th Avenues Alternative</u>



Figure 2.11B. West 6th/7th Avenues - West 11th Avenue Alignment Alternative Roadway Improvements

Because it was shorter, straighter, more cost-effective, and had a lower potential for significant environmental effects, the West 13th-West 11th Avenues route dramatically outperformed the West 6th-West 7th Avenues route in the Alternatives Analysis Report. AR0053036; AR0053039.  The Alternatives Analysis Report concluded—using the same criteria employed in the EA—that the West 13th-West 11th Avenues route was superior to the LPA along West 6th-West 7th Avenues.  AR0082365 – AR0082366.  Thus, the West 13th-West 11th Avenues route is inarguably a ***reasonable alternative*** under NEPA.  FTA's failure to give "full and meaningful consideration" to that reasonable alternative in the EA was a blatant violation of NEPA.  *See Western Watersheds*, 719 F.3d at 1050.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 8
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Perhaps sensing the weakness of its decision to exclude the West 13th-West 11th
Avenues route from consideration in the EA, LTD commissioned an independent expert
named Jarrett Walker to "review" the WEEE just a few months before the EA was released
to the public. AR0115273. Walker's April 2012 report underscores the unreasonableness
of LTD's alternatives discussion. According to Walker, the West 6th-West 7th Avenues
route that had been selected as the only action alternative for consideration in the EA was
"dramatically inferior" to the West 13th-West 11th Avenues route. AR0079544 –
AR0079545. Walker's report pointed out that "[s]uccessful rapid transit lines always
follow a reasonably direct path between any two points on the line," and that the detour to
West 6th and West 7th Avenues was not a reasonably direct connection between downtown
and the outer West 11th portion of the line. AR0079546; AR0079547. Moreover, the
circuitous nature of the West 6th-West 7th Avenues route resulted in travel times between
31% and 37% higher than the West 13th-West 11th Avenues route. AR0079547. The
report concluded that the West 6th-West 7th Avenues route "will always look and feel
compromised," and that "[e]ventually, it will be necessary to add this [West 13th-West 11th
Avenues] segment back" into the EmX system. AR0079548.

Even though the EA states that all background reports and studies would appear on
the LTD website (AR0118817), Walker's report was not listed in the EA's index of
supporting documents or made available on the LTD website when the EA was released to
the public.[2] AR0119175 – AR0119176. LTD did not acknowledge the existence of the
Walker report until it came to light during the public comment period.[3] In the FONSI's
responses to public comments, LTD and FTA claimed that they had somehow read the

---

[2] The failure to include relevant information like the Walker report in an EA is in itself a violation of NEPA. *See Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1213-14 (9th Cir. 1998).

[3] Walker's report was also not provided to the relevant decision-making bodies before the publication of the EA. AR0115274 (noting that the City Council and LTD Board were provided with the report "later in the year," before they voted to proceed with the LPA).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 9
No. 2:13-CV-01004-TSZ

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1    Walker report's devastating critique of the only route studied in the EA as concluding that

2    constructing the West 6th-West 7th Avenues route was "a reasonable step in building the

3    overall BRT system."  AR0115274.

4         LTD's own evidence, both in the Alternatives Analysis Report and the Walker

5    report, showed that the West 13th-West 11th Avenues route was superior in virtually every

6    respect to the West 6th-West 7th Avenues route that was selected as the LPA in May 2011.

7    LTD has not and could not argue that the West 13th-West 11th Avenues route would not

8    satisfy the stated purpose and need for the WEEE.  Nevertheless, this technically and

9    environmentally superior route was ***not considered at all*** as an alternative in the EA, nor

10   was any explanation for its omission given.  Under clear Ninth Circuit precedent, the

11   existence of this "viable but unexamined alternative" renders FTA's EA "inadequate."  *See*

12   *Western Watersheds*, 719 F.3d at 1050.  For this reason alone, FTA's environmental review

13   under NEPA should be declared unlawful and set aside.

14   **B.       The EA's statement of purpose and need violates NEPA.**

15             **1.       The narrowness of the purpose and need statement caused the exclusion
                        of the otherwise reasonable Transportation System Management**
16                      **alternative.**

17             As already noted, NEPA requires agencies to complete a review of all reasonable

18   alternatives.  Whether an alternative is reasonable often hinges on the agency's definition of

19   the purpose and need for the proposed federal action.  An alternative that fails to satisfy the

20   purpose and need of the proposed action can generally be excluded from further

21   consideration in a NEPA document.  *National Parks & Conservation Assn. v. Bureau of*

22   *Land Mgmt.*, 606 F.3d 1058, 1071 (9th Cir. 2009).  At the same time, "[a]n agency may not

23   define the objectives of its action in terms so unreasonably narrow that only one alternative

24   from the environmentally benign ones in the agency's power would accomplish the goals of

25   the agency's action . . . ."  *Id.* at 1070 (citation omitted).  That is because "[o]ne obvious

26   way for an agency to slip past the structures of NEPA is to contrive a purpose so slender as

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   to define competing 'reasonable alternatives' out of consideration (and even out of

2   existence)." *Simmons v. U.S. Army Corps of Engineers*, 120 F.3d 664, 666 (7th Cir. 1997).

3       In this case, LTD claims to be facing a general need to address traffic congestion

4   issues along the West 11th Avenue/Highway 126 route from Garfield Street west to the

5   City of Veneta. AR0082090 – AR0082091. But the EA's statement of purpose and need

6   targets a problem far narrower than congestion in that corridor. In particular, the EA limits

7   the purpose of the WEEE project to implementation of the "high-capacity transit mode

8   identified in the Regional Transportation Plan." AR0118850 (emphasis added). This

9   statement effectively narrowed the project to Bus Rapid Transit in May 2008, more than

10  four years before the EA was completed. AR0006333.

11      Bus Rapid Transit is not, of course, the only way to improve traffic flow and reduce

12  congestion. Ostensibly recognizing this fact, LTD's early consideration of potential

13  solutions to the West 11th Avenue/Highway 126 congestion problem included the low-cost

14  option of enhancing existing bus service, *i.e.*, Transportation System Management.

15  AR0052649. TSM focuses on relatively low-cost capital improvements and transit service

16  refinements, rather than major transit capital investments. TSM would consist of roadway

17  capital improvements (*e.g.*, upgrading or constructing new roadways and/or intersections)

18  and alterations to bus operations such as schedule and route adjustments. *Id*.; AR0082126.

19  But LTD eliminated the otherwise perfectly viable TSM alternative as inconsistent with the

20  project's narrowly defined purpose. AR0082130.

21      The criteria used to evaluate alternatives in the Alternatives Analysis Report—

22  which were derived from LTD's narrow statement of purpose and need—indicate that

23  implementing TSM was inferior to most Bus Rapid Transit options. AR0053036 –

24  AR0053037. But finding that an alternative may be less desirable from a transportation

25  perspective does not justify its exclusion from NEPA documents as an unreasonable

26  alternative. Indeed, the Alternatives Analysis found that TSM would likely have been

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 11
No. 2:13-CV-01004-TSZ

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  environmentally superior to the West 6th-West 7th Avenues route studied in the EA.

2  AR0053034.  Furthermore, the April 2012 Walker report reiterates the reasonableness of

3  the by-then excluded TSM alternative from a transportation perspective, pointing out that

4  the West 6th-West 7th Avenues route actually generates *slower* travel times than the

5  implementation of TSM.[4]  AR0079547.  By short-circuiting their NEPA review of the TSM

6  option, LTD and FTA impermissibly failed to consider those issues and excluded a

7  reasonable alternative that might have been superior to their preferred route.

8       NEPA "emphasizes the importance of coherent and comprehensive up-front

9  environmental analysis to ensure informed decision making," thereby preventing agencies

10  from acting "on incomplete information, only to regret its decision after it is too late to

11  correct."  *Churchill County v. Norton*, 276 F.3d 1060, 1072-73 (9th Cir. 2001).  Here, LTD

12  and FTA used the narrow purpose and need created in 2008 to prevent consideration in the

13  EA of an otherwise completely reasonable—and potentially environmentally superior—

14  alternative.[5]  As a result, neither FTA nor the public was able to adequately compare the

15  environmental effects of TSM with the effects of the West 6th-West 7th Avenues route.

16  That arbitrary and capricious outcome mandates that FTA's decision be declared unlawful

17  and set aside.

18       **2.    The WEEE simply is not needed.**

19       The narrow goal that LTD is pursuing is not the only problem with its statement of

20  purpose and need.  Although the EA lists several "needs" that LTD claims support the

21  construction of the WEEE (AR0082112 – AR0082113), the facts on the ground belie the

22

23  [4] LTD inexplicably routed TSM buses along West 13th Avenue (AR0118028), when using existing routes along West 11th Avenue would have further reduced travel times, making the TSM option even more attractive.

24
25  [5] LTD was heavily invested in the construction of the WEEE and its "locally preferred" alternative.  In 2010, LTD paid thousands of dollars for a media relations firm to run a "political campaign" intended to "persuade the public to support LTD's efforts" on the WEEE, and to "monitor" the "social media interactions" of WEEE opponents.  AR0079516-AR0079521.  Similar expenditures on public relations advocacy have continued throughout the WEEE environmental review process, including $39,000 in the third quarter of 2012 alone. AR0079523.

26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 12
No. 2:13-CV-01004-TSZ



YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

notion that more bus service is needed along the corridor here at issue.  When FTA and LTD prepared their EA, LTD was operating a bus route identified as "Line 30" that was a key part of proposed bus service presented in the EA's no action alternative.  AR0082132, AR0082133, AR0082138.  Today, however, that line has been taken out of service, strongly suggesting a lack of ridership in precisely the area where the WEEE would operate.  *See LTD Cuts 20 Percent of Bus Service*, *at* http://www.kval.com/news/91854329.html (April 22, 2010).  Indeed, press reports indicate that LTD took the 30 route out of service in September 2010, before it had even published the Alternatives Analysis—a fact that goes unmentioned in both the Alternatives Analysis Report and the EA.

NEPA requires "in-depth" consideration of the "threshold question" of "whether the proposed policy is even necessary." *Natural Resources Def. Council v. Hughes*, 437 F. Supp. 981, 991 (D.D.C. 1977).  Without evidence that a project is needed—or in the face of evidence that it is not needed—an agency cannot satisfy NEPA's requirement that it make an informed decision. *Chelsea Neighborhood Ass'n v. U.S. Postal Serv.*, 516 F.2d 378, 389 (2d Cir. 1975).  LTD's claimed need for the WEEE rings hollow when viewed in light of its decision to reduce bus service in the same area.  Without concrete evidence of a need for the WEEE, FTA is acting arbitrarily and capriciously by endorsing any alternative other than no action.

**C.      The EA's discussion of environmental effects and mitigation is inadequate to support FTA's FONSI.**

In addition to excluding reasonable alternatives from detailed consideration in the EA, FTA and LTD decided to shift from their original plan to prepare an EIS in favor of a less-detailed EA.  AR0052705.  An EA must "provide[] sufficient evidence and analysis for determining whether to prepare an Environmental Impact Statement or a finding of no significant impact." 40 C.F.R. § 1508.9(a)(1).  Determining whether a project's environmental effects qualify as "significant" requires consideration of the intensity (i.e.,

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 13
No. 2:13-CV-01004-TSZ

YARMUTH  WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

the severity), as well as the context, of those effects. *See* 40 C.F.R. § 1508.27. To justify

the issuance of a FONSI, an agency must evaluate all relevant factors and "supply a

'convincing statement' of reasons to explain why a project's impacts are insignificant."

*Blue Mountains*, 161 F.3d at 1212. If the project will result in a significant effect, the

agency must prepare an EIS unless it finds that changes or safeguards are incorporated into

the action that sufficiently reduce the environmental effects to a minimum. 23 C.F.R.

§ 771.105(d); *see also* 76 Fed. Reg. 3843 (Jan. 21, 2011), Final Guidance for Federal

Departments and Agencies on the Appropriate Use of Mitigation and Monitoring and

Clarifying the Appropriate Use of Mitigated Findings of No Significant Impact. Moreover,

to prevail on a claim that an agency violated its statutory duty to prepare an EIS, a "plaintiff

need not show that significant effects will in fact occur." *Idaho Sporting Congress v.*

*Thomas*, 137 F.3d 1146, 1149 (9th Cir. 1998) (internal quotations omitted), *overruled on*

*other grounds by The Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008). It is enough

that the plaintiff has raised "substantial questions [as to] whether a project may have a

significant effect" on the environment. *Id.*

      1.      **The EA and FONSI fail to incorporate specific or defined mitigation measures that can adequately support a FONSI.**

By FTA's admission, the WEEE will have significant adverse effects on the

environment absent the implementation of mitigation measures. AR0118832. The only

way to avoid preparation of an EIS in the face of such significant environmental effects is

to demonstrate that they can be mitigated to the point of non-significance. The mitigation

measures relied on in the EA, however, are not sufficiently specific or defined to support a

FONSI. Founding a FONSI on mitigation requires sufficient explanation of why the

agency concluded that mitigation can transform significant effects into insignificant ones.

FTA's proposed mitigation fails to do so.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 14
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Although FTA is not required to develop a complete mitigation plan, proposed mitigation measures "must be developed to a reasonable degree." *National Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 734 (9th Cir. 2001) (citation omitted), *abrogated on other grounds by Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). "A perfunctory description or mere listing of mitigation measures, without supporting analytical data, is insufficient to support a finding of no significant impact." *Id.*; *see also Neighbors of Cuddy Mtn. v. U.S. Forest Service*, 137 F.3d 1972, 1380 (9th Cir. 1998) (rejecting "broad generalizations" and "vague references" to mitigation measures); *Idaho Sporting Congress*, 137 F.3d at 1151 (requiring analytical data to support proposed mitigation measures). An EA must demonstrate both that the proposed mitigation provides an "adequate buffer" against the negative impacts of the plan, and that that the mitigation is concrete and enforceable. *National Parks & Conservation*, 241 F.3d at 735.

The EA in this case concludes that "[o]verall, taking into account mitigation, LTD does not expect that building and operating the Locally Preferred Alternative would cause significant adverse effect" (AR0118832), but fails to specify the mitigation to be relied on, or to make any firm commitments to mitigation measures. Its few references to mitigation describe measures that are required only "where feasible" or "where practicable."[6] This is inadequate to ensure mitigation of the Project's significant impacts and is, therefore, insufficient to support a FONSI.

The unenforceable claims of mitigation in the EA include:

---

[6] The FONSI largely retains this type of qualifying language, and often leaves implementation of its "required" mitigation up to LTD. AR0115285 (describing a process LTD should use "to determine whether measures can successful mitigate successful impacts"); AR0115286 ("determine feasible repairs"); AR0115287 ("where feasible"); AR0115288 (retain, protect existing trees and landscaping "where practicable"); AR0115289 (incorporate art elements "where feasible"); AR0115293 (replace trees "as feasible"); AR0115295 (minimize new impervious surface "as much as feasible"); AR0115298 (preserve existing trees "where practicable"); AR0115299 (minimize access impacts by "maximizing as feasible"; offset on-street parking loss "as feasible"; redesign and/or restripe off-street parking areas "where feasible").



1.  Parking Impacts: The EA concludes that "Mitigation measures such as restriping could reduce the net loss of off-street parking to as few as 18 parking spaces affecting five businesses/institutional sites, which would lose between one and seven spaces each.  LTD would also replace off-street parking *if necessary* and *where feasible*."  AR0118834 (emphasis added).

2.  Noise and Vibration Impacts: The EA acknowledges the likelihood of impacts—both construction impacts and impacts associated with the extension—but relies on mitigation to conclude that the impacts will not be significant.  AR0118945-AR0118946.  The mitigation measures outlined in the EA, however, particularly those associated with construction noise and vibration, fail to show how they would effectively mitigate that noise.

3.  Geology and Seismic Activity Impacts: The EA acknowledges that soils exposed to excavation will be susceptible to erosion but the only mitigation suggested is the future preparation of geotechnical studies.  AR0118979.  Agencies cannot issue a FOSNI on the bases of studies that have not yet been performed.  This is precisely why mitigation must be incorporated into the proposed action.

4.  Wetlands Impacts: The EA recognizes that the West 6th-West 7th Avenues route will result in permanent impacts to wetlands. AR0118996.  Although the EA states generally that it would mitigate these impacts by providing compensatory mitigation, the EA fails to provide any specifics or make any clear commitments.

Without a greater commitment to more detailed mitigation in these and other areas, FTA cannot reasonably conclude that the WEEE will not have significant effects on the environment.  Accordingly, its FONSI should be declared unlawful and set aside.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 16
No. 2:13-CV-01004-TSZ

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

2.      **The EA omits information concerning significant environmental effects.**

In addition to the EA's failure to commit to sufficient mitigation, it does not give adequate attention to other effects with the potential to be significant.

a.      **The EA fails to adequately address the WEEE's effects on transit.**

As proposed, the WEEE will require construction of approximately 5.9 miles of Bus Rapid Transit lanes and 13 new stations or station pairs.  AR0118825.  Several sections of the WEEE will consist of dedicated Bus Rapid Transit lanes, meaning that certain lanes currently used for parking or vehicular traffic will be removed from the general use and restricted to bus use only.  AR0118879, AR0118822.  To make matters worse, the West 6th-West7th Avenues route includes a designated freight route on the National Highway System.  AR0119073.  Still, the EA fails to provide an adequate analysis of how the removal of general purpose lanes on West 6th and West 7th Avenues will impact traffic generally, and heavy vehicle traffic in particular.

The decision to eliminate general purpose lanes on a National Highway System Statewide Highway is a major policy decision that requires a formal technical review by the Oregon Department of Transportation ("ODOT") and Federal Highway Administration.  It is not clear when, if ever, LTD will seek these approvals.  Nevertheless, and without conducting an adequate traffic study, the EA generally assumes that intersection improvements associated with the project will also improve truck freight flow.  AR0119074.  As explained by Plaintiffs' experts, this conclusion lacks a reasonable foundation.  A proper understanding of traffic and freight traffic effects would have required an analysis that included, at a minimum:

- an evaluation on how the removal of a through lane would affect weaving among the remaining three lanes;

- an analysis on how the Bus Rapid Transit lane would function when tractor trailers, rather than small autos, need to use the turn lane;

- a comparative analysis of the "Locally Preferred Alternative" with the No-Build alternative queuing conditions;

- an analysis of the cumulative effect of the Project and other reasonably foreseeable Bus Rapid Transit projects on the long-term freight system in the Project area; and

- an evaluation of how disruptions in freight traffic could impair the operational efficiencies and ultimate viability of the industrial uses in the Project area.

AR0079509.  Absent a more serious effort to evaluate traffic flow—the improvement of which is a primary purported goal of the WEEE—FTA and LTD cannot claim to have taken a "hard look" at the environmental effects of their project.[7]

In addition, the EA fails to analyze the adverse impacts that will result from adding two-way bus traffic adjacent to one-way automobile flow on Charnelton Street.  Charnelton Street currently is classified as a "local street."  AR0119044.  Local streets have the "sole function of providing direct access to adjacent land [and] are deliberately designed to discourage through-traffic movements."  AR0119041.  The WEEE would eliminate local on-street parking in the inner commercial core area along Charnelton and would convert a travel lane currently serving as access to local businesses to a BRT specific lane.  AR0119068; AR0119073.  The WEEE will therefore require a functional change in classification of Charnelton to account for the street being primarily used for regional transportation purpose, which will require a change to the Eugene-Springfield Metropolitan

---

[7] It is apparent from the EA that LTD does not believe four mixed traffic lanes are needed on these avenues, as the WEEE will eliminate mixed traffic lanes along the EmX route.  Yet, LTD has neither performed a study showing that four mixed traffic lanes are no longer needed on these streets nor provided any analysis of the impact of dedicated bus lanes on these streets, including the addition of six bus stops per hour in mixed traffic at two different spots.



Area General Plan ("Metro Plan").[8]  The EA has failed to address the impacts of this change, or of the addition of 12 EmX buses to the current bus load schedule on Charnelton.

### b. The EA fails to assess foreseeable impacts of expected nodal development.

The EA claims that the WEEE would "advance the City's land use plans for increased density and development" in areas designated for "nodal development"[9] (AR0118837), but it fails to adequately account for the indirect and cumulative impacts of that increased density and development.  If the WEEE is truly going to contribute to development along the proposed route, then the EA should have considered that development to be an indirect effect of the project, and conducted an evaluation of its environmental impacts—including impacts to the areas along the route that are designated "light to medium industrial" and "heavy industrial."

Typically, high volume transit investments designed to serve nodal development are situated to run through planned nodal development areas with the goal of maximizing the transit investment potential.  AR0079507.  The WEEE, however, is not.  Almost the entire westbound WEEE route runs along areas designated for light-medium industrial and heavy industrial in the Metro Plan.  *Id.*  This means a significant portion of the line will be located next to areas where development intensity is modest and a change to more transit-supportive land uses are ***not*** supported by the local comprehensive plan.

This is not the first proposed commercial encroachment in the industrial area around West 6th and 7th Avenues.  Consequently, the land use plans for these areas stress the importance of retaining them as viable industrial areas.  *Id.*  The Metro Plan aims to ensure

---

[8] The Metro Plan is the official long-range comprehensive plan of metropolitan Lane County and the cities of Eugene and Springfield.  It is available at www.lcog.org/documents/metro/METROPLAN_currentto12-31-10.pdf.

[9] Nodal development is generally found in suburban and urban locations that provide a mix of residential commercial, and service opportunities in a compact, walkable area.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 19
No. 2:13-CV-01004-TSZ



YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

compatibility between industrial lands and adjacent areas by providing existing industrial

activities sufficient adjacent land for future expansion, discouraging amendments to the

Plan that would change development-ready industrial lands to non-industrial designations,

and encouraging compatibility between industrial zoned lands and adjacent areas in local

planning programs.  Moreover, the Bethel-Danebo Neighborhood Refinement Plan Phase II

provides that remaining industrial areas should be protected from encroachment by

incompatible uses.[10]

      The EA contains no meaningful analysis of the WEEE's conflict with these land use

plans, and does not adequately discuss how the project would negatively impact the

industrial land uses—and industrial jobs—adjacent to the project.  Again, this represents a

failure to take a "hard look" at the effects of the WEEE in the EA.

      **c.**      **The EA fails to provide an analysis of proportional effects on
minority populations.**

      Presidential Executive Order 12898 requires federal agencies to identify and address

disproportionately high and adverse human health or environmental effects of their

programs and activities.  The U.S. Department of Transportation Order implementing

Executive Order 12898 requires the Department to avoid disproportionately high and

adverse effects on minority populations.  62 Fed. Reg. 18377 (April 15, 1997).

      When LTD prepared its Alternatives Analysis, it included a map showing that the

minority population in the area affected by the WEEE is significantly higher than the

minority population in the rest of the region.  AR0118194.  The same map appeared in the

EA (AR0082192), which explicitly acknowledged that the project area "has a greater

proportion of low-income people and minorities" (AR0082197).  But that is as far as the

analysis goes.  The EA effectively assumes, apparently without consideration of changes to

---

[10] Available at: https://scholarsbank.uoregon.edu/xmlui/bitstream/handle/1794/7901/Eugene_Bethel_Danebo_
Refinement_Plan_2.pdf?sequence=1.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 20
No. 2:13-CV-01004-TSZ



YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

bus service or the potential for displacement of minority residents or businesses, that the effects of the WEEE on minorities will not be disproportionately high or adverse.[11] AR0082197 – AR0082198.  The EA fails to include any meaningful analysis of environmental justice, or any supporting documentation to substantiate the conclusion that adverse impacts on minority populations will not be disproportionately high.  Rather, the EA simply provides descriptive statistics, pulled primarily from census data, on the minority population in the project area.  A meaningful analysis of impacts to minority populations requires comparisons of proportionate impact between minority populations and the population of a whole.  The EA's failure to take a "hard look" at environmental justice effects accordingly warrants a declaration that FTA's environmental review under NEPA was unlawful and should be set aside.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant summary judgment in their favor; declare unlawful and set aside FTA's environmental review of the WEEE under NEPA; enjoin the grant of any Small Starts funding for the WEEE until FTA complies with NEPA; enjoin LTD from moving forward with the WEEE (including through the acquisition of property); award Plaintiffs their attorneys' fees; and grant such other relief as the Court may deem necessary or appropriate.

---

[11] Plaintiffs are aware that one of the two businesses that LTD admits will close due to the proposed project is minority-owned.  The EA does not mention this fact.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 21
No. 2:13-CV-01004-TSZ



YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1   DATED:  January 31, 2014.

2                                        **YARMUTH WILSDON PLLC**

3                                        By *s/ Kristina S. Bennard*
4                                        Kristina S. Bennard, WSBA No. 37291
                                         818 Stewart Street, Suite 1400
5                                        Seattle, WA  98101
                                         Telephone:   206.516.3831
6                                        Email:   kbennard@yarmuth.com

7                                        **VENABLE LLP**

8                                        Jay C. Johnson (*pro hac vice*)
                                         575 7th Street NW
9                                        Washington, D.C. 20004
                                         Telephone:   202.344.4000
10                                       Email:   jcjohnson@Venable.com

11                                       *Attorneys for Plaintiffs Our Money Our Transit
                                         and Robert Macherione*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2

3              I hereby certify that on January 31, 2014, I electronically filed the foregoing

4     with the Clerk of the Court using the CM/ECF system which will send notification of such

5     filing to the following:

6         Brian C. Kipnis
          Assistant United States attorney
7         5220 United States Courthouse
          700 Stewart Street
8         Seattle, WA 98101-1671
          Email:  brian.kipnis@usdoj.gov
9              *Attorneys for Federal Defendants*

10

11        Louis A. Santiago
          Holland & Knight LLP
          2300 U.S. Bancorp Tower
12        111 S.W. Fifth Avenue
          Portland, OR 97204
13        Email:  serve.las@hklaw.com
14             *Attorneys for Intervenor Lane Transit District*

15             I declare under penalty of perjury under the laws of the State of Washington that the

16    foregoing is true and correct.

17             Dated January 31, 2014 at Seattle, Washington.

18                                           *s/Sue Stephens*
                                             Sue Stephens, Legal Assistant
19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW – 23
No.: 2:13-CV-01004-TSZ

766.01 na310601

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888