1

The Honorable Thomas S. Zilly

2

3

4

5

6

7       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
8                 AT SEATTLE

9   OUR MONEY OUR TRANSIT and ROBERT          Case No. 2:13-cv-01004-TSZ
    MACHERIONE,
10                                            DEFENDANT INTERVENOR LANE
                    Plaintiffs,              TRANSIT DISTRICT'S OPPOSITION
11                                            TO PLAINTIFFS' MOTION FOR
            v.                                SUMMARY JUDGMENT AND CROSS
12                                            MOTION FOR SUMMARY JUDGMENT
    FEDERAL TRANSIT ADMINISTRATION;
13  PETER M. ROGOFF, in his official capacity as   ORAL ARGUMENT REQUESTED
    Administrator, Federal Transit Administration;
14  and RICHARD F. KROCHALIS, in his official     NOTED ON MOTION CALENDAR:
    capacity as Regional Administrator, Federal    April 25, 2014
15  Transit Administration Region X Office,

16                  Defendants,

17  LANE TRANSIT DISTRICT,

19                  Defendant Intervenor.

20  ─────────────────────────────────

21

22

23

24

25

26

27

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'        **HOLLAND & KNIGHT LLP**
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR            111 S.W. Fifth Avenue
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ)            2300 U.S. Bancorp Tower
                                                          Portland, Oregon  97204
                                                          Telephone: 503.243.2300

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ............................................................................................................1

      A.    West Eugene EmX Extension ("WEEE") ...........................................................1

      B.    Plaintiffs Our Money Our Transit and Robert Macherione ................................8

III.  ARGUMENT ..................................................................................................................9

      A.    The Court Lacks Subject-Matter Jurisdiction To Hear Plaintiffs'
            NEPA Claims .......................................................................................................9

            1.    Plaintiffs Lack Constitutional Standing To Bring Their
                  NEPA Claims ...........................................................................................9

                  a.    Plaintiffs Have Not Suffered An Injury In Fact.............................9

                  b.    Plaintiffs' Alleged Injuries Are Not Redressable .........................10

            2.    Plaintiffs Lack Prudential Standing To Make A NEPA
                  Claim .......................................................................................................10

                  a.    Plaintiffs' Injuries Are Not Within The Zone Of
                        Interest ..........................................................................................11

                  b.    OMOT Does Not Have Organizational Standing .........................12

      B.    The Environmental Assessment For The WEEE Satisfies NEPA's
            Requirements ......................................................................................................13

            1.    Standard of Review ................................................................................13

            2.    The Purpose and Need Statement Reasonably Defined the
                  WEEE's Objectives ................................................................................14

            3.    Consideration of the LPA and No-Build Alternative in the
                  EA Was Proper .......................................................................................16

            4.    Mitigation Of Environmental Impacts in EA Supports The
                  FONSI .....................................................................................................19

            5.    EA Properly Considered All Effects........................................................22

IV.   CONCLUSION .............................................................................................................23

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page i

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Alaska Survival v. Surface Transp. Bd.*,
   705 F.3d 1073 (9th Cir. 2013) ...................................................................16

5

*Ashley Creek Phosphate Co. v. Norton*,
6   420 F.3d 934 (9th Cir. 2005) .....................................................................11

7

*Cal. Forestry Ass'n v. Thomas*,
   936 F.Supp. 13 (D.D.C. 1996) ...................................................................11

8

*Campbell v. Jilik*,
9   2010 WL 2605239 (W.D. Wash. June 25, 2010) .........................................9

10

*City of Oxford v. FAA*,
   428 F.3d 1346 (11th Cir. 2005) .................................................................14

11

*Dep't of Transp. v. Pub. Citizen*,
12   541 U.S. 752 (2004) ...................................................................................13

13

*Druid Hills Civic Ass'n v. Fed. Highway Admin.*,
   772 F.2d 700 (11th Cir. 1985) ...................................................................13

14

*Earth Island Inst. v. U.S. Forest Serv.*,
15   697 F.3d 1010 (9th Cir. 2012) ...................................................................17

16

*Edwardsen v. U.S. Dep't of Interior*,
   268 F.3d 781 (9th Cir. 2001) .....................................................................18

17

*Fitzgerald Reno, Inc. v. U.S. Dep't of Transp.*,
19   60 F. App'x 53 (9th Cir. 2003) .............................................................11, 12

20

*Forest Stewardship Council-U.S. v. Office of U.S. Trade Representative*,
   405 F. App'x 144 (9th Cir. 2010) ...............................................................10

21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
22   528 U.S. 167 (2000)...................................................................................12

23

*HonoluluTraffic.com v. FTA*
No. 13-15277 (9th Cir. Feb. 18, 2014)………………………………………………15, 18

24

*Idaho Sporting Cong. v. Thomas*,
25   137 F.3d 1146 (9th Cir. 1998) ...................................................................21

26

*Inland Empire Pub. Lands Council v. U.S. Forest Serv.*,
27   88 F.3d 754 (9th Cir. 1996) .......................................................................13

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page ii

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

*League of Wilderness Defenders-Blue Mountains Biodiversity Project v. U.S. Forest Serv.*,
689 F.3d 1060 (9th Cir. 2012) ........................................................................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...........................................................................................9

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ..........................................................................................10

*Morongo Bank of Mission Indians v. FAA*,
161 F.3d 569 (9th Cir. 1988) .............................................................................22

*National Parks & Conservation Ass'n v. Babbitt*,
241 F.3d 722 (9th Cir. 2001) .............................................................................21

*National Parks & Conservation Assn. v. Bureau of Land Mgmt.*,
606 F.3d 1058 (9th Cir. 2009) ...........................................................................15

*Native Ecosystems Council v. U.S. Forest Serv.*,
428 F.3d 1233 (9th Cir. 2005) .......................................................13, 15, 17, 19

*Native Ecosystems Council v. Weldon*,
697 F.3d 1043 (9th Cir. 2012) ...........................................................................13

*Neighbors of Cuddy Mountain v. U.S. Forest Serv.*,
137 F.3d 1372, 1381 (9th Cir. 1998) ................................................................21

*Nev. Land Action Ass'n v. United States Forest Serv.*,
8 F.3d 713 (9th Cir. 1993) ...........................................................................10, 11

*North Idaho Community Action Network v. U.S. Dep't of Transp.*,
545 F.3d 1147 (9th Cir. 2008) ...........................................................................17

*Pac. Coast Fed'n of Fishermen's Associations v. Blank*,
693 F.3d 1084 (9th Cir. 2012) ...............................................................19, 20, 21

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
415 F.3d 1078 (9th Cir. 2005) ...........................................................................12

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989) ...................................................................................13, 19

*Salmon River Concerned Citizens v. Robertson*,
32 F.3d 1346 (9th Cir. 1994) .............................................................................18

*Simmons v. U.S. Army Corps of Engineers*,
120 F.3d 664 (7th Cir. 1997) .............................................................................15

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)............................................................................................9

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page iii

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

*Tillamook Cnty. v. U.S. Army Corps of Eng'rs,*
    288 F.3d 1140 (9th Cir. 2002) ...................................................................19

*Tri-Valley CAREs v. U.S. Dep't of Energy,*
    671 F.3d 1113 (9th Cir. 2012) ...................................................................13

*Western Radio Servs. Co. v. Espy,*
    79 F.3d 896 (9th Cir. 1996) ......................................................................11

*Western Watersheds Project v. Abbey,*
    719 F.3d 1035 (9th Cir. 2013) ..................................................................18

*Westlands Water Dist. v. U.S. Dep't of Interior,*
    376 F.3d 853 (9th Cir. 2004) ....................................................................15

**STATUTES**

42 U.S.C. § 4321 *et seq.*..............................................................................13

**OTHER AUTHORITIES**

40 C.F.R. § 1502.1 ......................................................................................13

40 C.F.R. § 1502.13 ....................................................................................14

40 C.F.R. § 1508.7 ......................................................................................22

40 C.F.R. § 1508.27 ....................................................................................22

76 Fed. Reg. 3843-01 ..................................................................................21

Fed. R. Civ. P. 56 ................................................................................ *passim*

Article III, Section 2 of the U.S. Constitution .................................................9

Executive Order 12898 ................................................................................22

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page iv

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1   Pursuant to Fed. R. Civ. P. 56 Intervenor respectfully files this Opposition to Plaintiffs'

2   Motion for Summary Judgment and Cross Motion for Summary Judgment.

3                                   I.  **INTRODUCTION**

4   Plaintiffs ask this Court to set aside the results of over six years of exhaustive planning

5   for a much needed public transit service. This process included hundreds of community meetings

6   and thousands of public comments -- resulting in significant project modifications after

7   consideration of scores of alternatives. Each alternative was carefully and publicly vetted under

8   various criteria before the environmentally preferable alternative was identified. Plaintiffs, a

9   taxpayer group and its spokesperson, seek to stop the project. They oppose the spending of tax

10  money on the project, not the environmental implications of it. However, their taxpayer agenda

11  does not afford them standing under the National Environmental Policy Act ("NEPA") -- they

12  cannot stumble into NEPA's zone of interests. Moreover, the procedural requirements of NEPA

13  do not mandate that the agencies choose Plaintiffs' preferred alternative or require any greater

14  level of analysis than was already performed over the past six years.

15                                  II.  **BACKGROUND**

16  A.   **West Eugene EmX Extension ("WEEE")**

17  In 2007, the Eugene City Council and the Lane Transit District ("LTD") Board of

19  Directors identified a need for public transit service along an 8.8-mile stretch of the West 11th

20  Avenue Corridor -- the primary east/west transit corridor linking the west side of Eugene to

21  downtown. (AR118825). To serve this need, LTD, the county transit agency providing daily bus

22  service to nearly 300,000 residents, proposed the West Eugene EmX Extension ("WEEE") -- a

23  new line of the Emerald Express ("EmX") Bus Rapid Transit service that would run from the

24  main downtown Eugene Station through the West 11th Avenue Corridor. (AR118847). The fleet

25  of hybrid busses used on the EmX have been recognized nationally as sustainable public

26  transportation. (AR7309). The busses run on dedicated lanes that allow them to bypass traffic

27

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 1

1 and operate more efficiently for riders and the environment. (*Id.*) The WEEE will also improve

2 several intersections, and bicycle lanes and pedestrian crossings along the Corridor. (AR118045).

3      Between 2007 and 2013, in anticipation of seeking funding for the WEEE under the

4 FTA's New Starts program, LTD identified and evaluated various alternatives to serve the need

5 along the West 11th Avenue Corridor. (AR117951). The study examined a broad range of bus

6 and bus rapid transit alternatives to link the residential and commercial activity centers along the

7 corridor with the region's main business districts -- Eugene and Springfield -- and the region's

8 largest employers, the University of Oregon and Peace Health Hospital. (AR118825). At every

9 stage, LTD facilitated the review of project information and incorporated feedback from the

10 communities' diverse stakeholder groups. (AR118841-42). LTD also "coordinated with local,

11 state and federal agencies regarding the conceptual designs and evaluations of those designs."

12 (AR115274). Ultimately, the five-year study produced a record more than 130,000 pages long.

13      As a preliminary step in the process, LTD drafted a Purpose and Need Statement based

14 on previous planning work and input from the public. (AR118848). LTD published a Notice of

15 Intent to conduct an environmental review of the WEEE, and began conducting workshops with

16 local, state and federal agencies and open houses with the public. (*Id.*) In the fall of 2007, LTD

17 established the WEEE Corridor Committee -- comprised of representatives from various

19 agencies, businesses, neighborhoods and other interested groups. (*Id.*) The Committee refined

20 the Statement based on public and agency feedback and the LTD Board adopted the final

21 Purpose and Need Statement on March 19, 2008, (*Id.*),[1] which states in part:

22       The purpose of the proposed WEEE project is to implement high-capacity public
        transportation service, in the West 11th Corridor (east/west), utilizing the adopted
23       high-capacity transit mode identified in the Regional Transportation Plan, that is
        less hindered by congestion and that provides efficient, effective, dependable, and
24       visually appealing service throughout the life of the project.

25 (AR118850). The Statement also detailed the need for the project based on historic and projected

26 increases in traffic congestion along the corridor and the resulting deteriorating reliability of

27 _____

[1] LTD and the WEEE Corridor Committee considered 396 comments on the proposed Statement. (AR115265).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 2

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1    public transportation there and the local and regional land use and development plans, among

2    others. (AR118850-51). Based on the Statement, LTD established eight criteria by which to

3    compare alternatives and to evaluate their effectiveness: 1) improve reliability of service; 2)

4    improve efficiency of service to maximize scarce resources; 3) support local development

5    consistent with adopted community plans; 4) accommodate future growth; 5) consider needs of

6    pedestrians, bicyclists, and motorists; 6) provide fiscally stable public transportation; 7) protect

7    resources in the natural and built environment; and 8) support LTD's sustainability policy and

8    the City's efforts to reduce greenhouse gas emissions. (AR118851-52).

9          Using these criteria, over the next two years, LTD evaluated and eliminated dozens of

10    alternatives. A large part of this process occurred at design workshops, and other public outreach

11    events. (AR118860). FTA and LTD also consulted with the U.S. Army Corps of Engineers, the

12    Bureau of Land Management, the U.S. Fish and Wildlife Service, and the Oregon Department of

13    State Lands to assess the project's potential effects on protected species and wetlands and to

14    modify the WEEE to minimize its effects on sensitive resources. (AR115156).

15          By early 2010, LTD had identified 58 alternatives for further evaluation through

16    technical impact studies: the No-Build, or no action alternative; the Transportation System

17    Management ("TSM"), or low-cost capital improvements alternative; and three bus rapid transit

19    ("BRT")[2] alternatives with 56 unique routing combinations. (AR118831). The three BRT

20    alternative alignments were (1) West 13th Avenue-West 11th Avenue; (2)West 6th/7th Avenues-

21    West 11th Avenue; and (3) West 6th/7th Avenues-West 7th Place. (AR117955).

22          By June 2010, based upon the findings of technical impact studies,[3] LTD staff

23    recommendations, public input, and advice from the Eugene City Council and other public

24

25    [2]BRT was adopted as the preferred strategy for the Eugene-Springfield metropolitan area following an extensive

26    Major Investment Study and subsequent Regional Transportation Plan, adopted in 2001 (AR117960).

       [3]Between June and September 2010, LTD commissioned more than twenty technical studies to evaluate the impact

27    of the WEEE on various biological, ecological and geological resources, land use, public spaces, and historic,
       archaeological and cultural resources, among others. (AR119175-78).

1    bodies, the LTD Board eliminated 46 of those BRT routing combinations.[4] (AR118864). Thirty-

2    two of the BRT routing combinations were eliminated because of their potential to have

3    significant adverse impacts on protected species, critical habitat, sensitive areas and wetlands,

4    parklands, the multiuse trail, and cultural resources. (*Id.*)[5] Another fourteen BRT options were

5    eliminated after the studies revealed that the high ratio of capital costs to projected ridership

6    would not address the city's public transit needs. (*Id.*)

7          Thereafter, the No-Build, TSM alternative and the remaining 10 BRT alignment

8    alternatives were advanced for further consideration in a detailed Alternatives Analysis ("AA").

9    (AR118865). The LTD Board advanced those ten BRT alternatives finding that the two along

10   West 13th Avenue-West 11th Avenue would "[t]end to have less likelihood to impact parklands

11   and open spaces," the four along West 6th/7th Avenues-West 11th Avenue would "[a]void

12   potential for impact to environmentally-sensitive natural resources," and the four along West

13   6th/7th Avenues-West 7th Place would "serve a relatively high number of acres of vacant and

14   redevelopable land." (AR118458). As it did consistently throughout the study, LTD used the

15   eight criteria of effectiveness discussed above, to weigh the benefits and impacts of each

16   alternative, including engineering and cost (AR118084-109), travel demand (AR118062-82),

17   transportation and parking impacts (AR118110-164), and various environmental factors.

19   (AR118166-290). LTD consulted with the FTA at every step in the AA process. (AR115156-57).

20         The Draft AA Report concluded that the West 13th Avenue-West 11th Avenue alignment

21   alternative performed best from a technical perspective and preliminarily recommended it as the

22   Locally Preferred Alternative ("LPA") for the WEEE. (AR118343). The determination was

23   based on operating and cost efficiencies, higher safety and mobility, and better support of the

24   BRT system plan. (AR118342). The West 6th/7th Avenues-West 11th Avenue alternative ranked

25   second as a result of higher projected number of property acquisitions and tree removals, and

26

27

---

[4] The alternatives were scored based on how effectively they met the project's objectives. The scores allowed for a comparison of the alternatives during the elimination process. (AR118442; AR118469-AR118473).

[5] Additionally, several of those routes were also found to negatively impact low income housing. (AR118864).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 4

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1  potential conflicts with the BRT System Plan. (AR118343). The West 6th/7th Avenues-West 7th

2  Place alternative followed a distant third, and the No-Build and TSM options were identified as

3  the least effective alternatives. (*Id.*) The Draft AA was published in October 2010. (AR117981).

4  After the release of the Draft AA Report, LTD received hundreds of comments that led to

5  modifications and clarification of the AA. (*Id.*)

6       Contemporaneously with the release of the Draft AA, LTD convened a group of local

7  decision-makers to assist in the selection of the LPA.[6] (AR117983). The Joint Locally Preferred

8  Alternatives Committee was composed of the Eugene Mayor, two Eugene City Councilors, two

9  representatives from the Central Lane Metropolitan Policy Committee, and three representatives

10  from LTD. (AR117983). The Committee served as a conduit of information between LTD and

11  the decision-making bodies represented by its members. (*Id.*) The Committee and the project's

12  three decision-making bodies addressed technical and community issues with the alternatives

13  studied, including the preliminary LPA. (AR118868). LTD held two open houses and four public

14  hearings concerning the selection of the LPA, and a joint public hearing of the Eugene City

15  Council, the Metropolitan Policy Committee, and the LTD Board to take public testimony about

16  the preliminary recommendation of the West 13th-West 11th Avenue alternative as the LPA.

17  (AR117990-91). The Committee also worked with the project team to develop mitigation

19  measures addressing potential impacts to property, land uses, parking, driveways, and businesses

20  for the alternatives. (AR0118868). LTD logged 1,225 comments from the public and government

21  agencies on the WEEE and the selection of the LPA. (AR117992). It appropriately considered

22  the input received and incorporated suggestions. (AR115159).

23       As a result of the public comments on the Draft AA, and the public process led by the

24  Joint LPA Committee, of the 10 alternatives studied in the AA, the four West 6th/7th Avenues-

25  West 11th Avenue alternatives that required adding a lane were eliminated because of their

26  _____

[6] In addition to the Joint LTD Committee, four other committees contributed to the selection of the LPA. In all, these
27  committees held 24 meetings to review the Draft AA, and the information and public comments concerning the
WEEE and to develop recommendations. (AR117984-85).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 5

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1    potential impacts on abutting properties and the character of downtown Eugene. (AR118868).

2    The remaining two alternatives that would travel along West 7th Place were also eliminated

3    because there was not sufficient population or ridership projections along those routes, the routes

4    would have had an adverse impact on the trucking industry in the area, and there was no public

5    or agency support for the alternative. (*Id.*) The TSM Alternative was eliminated because of its

6    relatively high operating cost per trip and because the Committee determined it did not meet the

7    purpose of the project. (*Id.*) Ultimately, the three-decision making bodies represented in the

8    Committee voted to support a mitigated version of the West 6th/7[th] Avenue alternative instead of

9    the West 13th-West 11th Avenue alternative that had been preliminarily recommended as the LPA

10   in the Draft AA. (AR118732). The decision was based on the Committee's work and public

11   input on the Draft AA, as discussed above, and the decision-making bodies' determination that

12   the mitigated West 6th/7[th] Avenue alternative would better support the City's goals and needs,

13   including future development and employment.[7] (AR118764; AR118778-80; AR118795).

14          The mitigated West 6th/7[th] Avenues-West 11th Avenue ("West 6[th]/7[th] Avenue") alternative

15   identified as the LPA was modified considerably during the public process that occurred after the

16   release of the Draft AA to:

17   • Avoid serious issues with wetlands, endangered species, and recreation/parklands
19      as a result of a revised path ending 2 miles east of the original terminus;

20   • Avoid the Amazon Creek and adjacent trail altogether, except for at one existing
        roadway crossing and at two new multi-purpose path crossings;

21   • Avoid the need for street improvements that would impact several historic
22      properties along the corridor;

23   • Require significantly less property acquisition than anticipated in the original
        LPA;

24   • Avoid adverse impacts to established residential neighborhoods; and

25   • Affect far fewer street and landscape tress than earlier iterations.

26

27   [7] The LPA will contribute to the City's goals of reducing greenhouse gas emissions (AR119122), connect the
     region's highest-growth centers, and encourage development along major arterial corridors. (AR119126).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 6

HOLLAND & KNIGHT LLP
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1   (AR118748).[8] These modifications further avoided and reduced potential impacts to the natural

2   and built environment -- pushing the project well below the threshold of "significant" impacts

3   that would require an Environmental Impact Statement ("EIS"). (AR118736-37). As a result,

4   FTA determined that the project's environmental review under NEPA be accomplished with an

5   Environmental Assessment ("EA"). (AR118748). This determination did not foreclose the

6   possibility that an EIS may become necessary if the EA showed the project would have

7   significant adverse impacts. (AR115157). The U.S. Army Corps of Engineers, the federal

8   cooperating agency under NEPA, concurred with the FTA's decision. (AR118748).

9       The EA built on the results of the AA and evaluated the transportation benefits,

10  environmental impacts, and financial implications on the natural and built environment of two

11  alternatives: the No-Build alternative (*i.e.* no changes to the baseline) and the LPA. (AR118869).

12  In addition, the EA dedicated a chapter to explaining the alternatives previously analyzed and the

13  process that ultimately resulted in the two alternatives discussed in the EA. (AR118859-95).

14  Using the eight measures of effectiveness used to evaluate all alternatives through the study,

15  LTD determined in the EA that

16  17  19
> [T]he LPA as compared to the No-Build Alternative better meets the purpose of the project, which is to provide efficient, effective, and dependable high capacity transit service in the West 11th Avenue Corridor.  The LPA also achieves land use and transportation goals, catalyzes economic opportunities, and protects environmental resources.

20  (AR119126). The EA concluded that "[o]verall, taking into account mitigation, LTD does not

21  expect that building and operating the LPA would cause significant adverse effects."

22  (AR118832). The draft EA was published on July 16, 2012. (AR115157). The agencies extended

23  the public comment period on the EA from the required 30 days to 45 days to provide the public

24  with sufficient time to consider all the materials and provide comment. (AR115159). In all, 1,569

25

26  _____

27  [8] Plaintiffs make no distinction between the West 6th/7[th] Alternative considered in the Draft AA and the modified West 6th/7[th] Alternative selected as the LPA -- ignoring the mitigation measures that ultimately led to the selection of that alternative as environmentally preferable in comparison to Plaintiffs' preferred alternative.

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 7

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1  separate comments on the EA were received. (AR115160). The comments did not reveal any

2  additional, material information or raise new issues. (*Id.*)

3      The FTA independently evaluated the adequacy of the EA and made a Finding of No

4  Significant Impact ("FONSI"). (AR115162). It found that the WEEE would have only short-term

5  construction impacts on residents and businesses along the alignment, and that the noise, dust

6  and fumes during construction were capable of being mitigated. (AR115163-64). The FONSI set

7  forth detailed mitigation measures with respect to noise and vibration, air quality, visual and

8  aesthetic resources, and various other ecological and geological issues. (AR115282-301). FTA

9  found that "with the accomplishment of these mitigation commitments, LTD will have taken all

10  reasonable, prudent, and feasible means to avoid or minimize any potential significant impacts

11  from the proposed actions." (AR115162). Importantly, FTA concluded the LPA would have

12  benefits to the environment, including reducing the regional vehicle miles traveled and air

13  pollution emissions as compared to the No-Build. (AR115164).

14  **B.**   **Plaintiffs Our Money Our Transit and Robert Macherione**

15      OMOT is a "transit watchdog group" formed solely to protest the operational cost of the

16  WEEE. (*See* Ex. 1 at 1-3). Macherione is OMOT's spokesperson.[9] *See* (Ex. 2). Plaintiffs oppose

17  the WEEE because they believe "it's a waste of money" that will hurt small businesses and

19  taxpayers. *See* (Ex. 3). *See* (AR79500-01); (Ex. 1 at 2) (OMOT believes the WEEE will have a

20  negative economic impact on nearby properties and businesses). As Plaintiffs have made clear,

21  their concerns are unrelated to the types of impacts covered by NEPA. Instead, "[t]he intent of

22  the suit is to stop this unneeded project and retain LTD's dwindling resources for more cost

23  effective and needed basic service in our community." (Ex. 2).

24

25

26

27

[9] Macherione's opposition to the spending of tax dollars on the WEEE dominated his comments during his extensive participation in the public process for the project. (*See e.g.* AR118792; AR29013-14; AR57775; AR76990-91; AE135640-43; AR78617-18).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 8

1  III.  **ARGUMENT**

2  **A.**  **The Court Lacks Subject-Matter Jurisdiction To Hear Plaintiffs' NEPA Claims**

3  The Court must resolve challenges to its jurisdiction before addressing the case on its

4  merits. *Campbell v. Jilik*, 2010 WL 2605239, at *4 (W.D. Wash. June 25, 2010). Plaintiffs'

5  Complaint and Motion are devoid of the required factual predicate for establishing that OMOT

6  or Macherione, its spokesperson, have standing to bring this suit.

7  **1.**  **Plaintiffs Lack Constitutional Standing To Bring Their NEPA Claims**

8  Article III, Section 2 of the U.S. Constitution limits the federal courts to adjudicating

9  actual cases or controversies. "[A]n essential and unchanging part" of this requirement is that the

10  plaintiffs have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party

11  invoking federal jurisdiction has the burden of establishing standing. *Id.* at 561. To satisfy

12  Constitutional standing requirements, a plaintiff must show: (1) it has suffered an "injury in fact"

13  that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

14  (2) the injury is fairly traceable to the challenged action; and (3) it is likely, as opposed to merely

15  speculative, that the injury will be redressed by a favorable decision. *Id.* at 560.

16  **a.**  **Plaintiffs Have Not Suffered An Injury In Fact**

17  OMOT alleges that it and its members will suffer "irreparable harm" as a result of the

19  WEEE. (Dkt. No. 1 at ¶ 17.) To assert the standing of its members, an organization must make

20  "specific allegations establishing that at least one identified member [ ] suffered or would suffer

21  harm" *Summers v. Earth Island Inst.,* 555 U.S. 488, 498 (2009). "[G]eneralized harm ... will not

22  alone support standing." *Id.* at 493. The bald allegation that OMOT and its members "are

23  adversely affected and aggrieved by….the WEEE, and by the adverse environmental effects the

24  WEEE will have on Eugene, Oregon" fails to set forth any concrete or particularized harm. (Dkt.

25  No. 1 ¶ 13.) The similarly conclusory allegations of spokesperson Macherione -- the lone OMOT

26  member named in the Complaint -- that he will "suffer injury from the noise, air pollution,

27  vibration, aesthetic and other environmental effects caused by the construction and operation of

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 9

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1   the WEEE" are also unavailing. (Dkt No. 1 at ¶ 15.) These general allegations do not set forth

2   any specific facts about the imminent, particularized injury Macherione will suffer from the

3   agencies' action. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990) (Conclusory

4   allegations in a complaint or other pleading are insufficient to establish standing on summary

5   judgment.). Moreover, far from "actual or imminent," the harms Macherione alleges are

6   speculative, at best, particularly given the FTA's determination in the FONSI that each of these

7   alleged injuries will be mitigated below the level of significance, if not non-existent.[10]

8                    b.    **Plaintiffs' Alleged Injuries Are Not Redressable**

9          The relief Plaintiffs seek cannot remedy the vague allegations of "adverse environmental

10  effects" that they half-heartedly allege. (Dkt. No. 1 ¶13). These generalized allegations of

11  environmental harm are but a thin veil for Plaintiffs' true purpose in bringing the suit -- to block

12  the spending of tax dollars on public transit projects. (*See* Ex. 1, 2 and 3). This is plain given that

13  Plaintiffs have failed to specify what measures Defendants could take to mitigate the supposed

14  injuries they allege. *See Forest Stewardship Council-U.S. v. Office of U.S. Trade Representative*,

15  405 F. App'x 144, 146 (9th Cir. 2010) (plaintiffs could not establish a redressable injury where

16  they could not point to any specific measure short of scrapping the proposed action that would

17  mitigate the alleged environmental harm). Indeed the only relief Plaintiffs will accept is to stop

19  the project, or move it to Plaintiffs' preferred route; relief that is not available under NEPA.[11]

20         2.    **Plaintiffs Lack Prudential Standing To Make A NEPA Claim**

21         In addition to the Constitutional requirements, Plaintiffs must establish that they have

22  prudential standing. *Nev. Land Action Ass'n v. United States Forest Serv*., 8 F.3d 713, 715–16

---

23  [10] As explained in the FONSI, each of Macherione's injuries, to the extent they are expected to have any impact, will
24  be mitigated below any significance. *See* Noise and Vibration, AR115168-69; Air Quality, AR115164, AR0115169-
    71. *See also* AR115162 ("FTA finds that with the accomplishment of these mitigation commitments, LTD will have
25  taken all reasonable, prudent, and feasible means to avoid or minimize any potential significant impacts from the
    proposed action.")

26  [11] Plaintiffs' preferred route will have greater environmental impacts. In turn, even if the WEEE is stopped as
    Plaintiffs' want, the fact is that traffic -- much dirtier, louder vehicles -- will still continue to pass in front of these
27  business. Plaintiffs' myopic attack on the WEEE fails to account for the simple fact that this vital mass transit
    project will result in a net gain for the environment.

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 10

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1  (9th Cir.1993). To establish prudential standing, Plaintiffs must show that they have an interest

2  "arguably within the zone of interests to be protected or regulated by the statute or constitutional

3  guarantee in question" thereby "exclud[ing] those plaintiffs whose suits are more likely to

4  frustrate than to further statutory objectives." *Id.* at 716. The zone of interest NEPA protects is

5  environmental. *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005).

6      a.    **Plaintiffs' Injuries Are Not Within The Zone Of Interest**

7         The injuries Plaintiffs allege are not within NEPA's zone of interest. OMOT is "transit

8  watchdog group" that expresses no environmental interests whatsoever. Macherione is a business

9  owner whose opposition to the project stems not from any environmental effects, but from the

10 use of tax dollars on the project.[12] These concerns are wholly outside NEPA's zone of interest

11 and, therefore, insufficient to establish OMOT's and Macherione's standing. *See Fitzgerald*

12 *Reno, Inc. v. U.S. Dep't of Transp.*, 60 F. App'x 53, 53-54 (9th Cir. 2003) (finding plaintiffs

13 whose "expressed concerns" were about their business did not have standing to bring NEPA

14 claim despite also making allegations regarding noise, dust, vibrations and fumes); *Ashley Creek*

15 *Phosphate Co.*, 420 F.3d at 945 ("purely economic injury that is not intertwined with an

16 environmental interest" is outside of NEPA's zone of interest); *Western Radio Servs. Co. v.*

17 *Espy*, 79 F.3d 896, 903 (9th Cir.1996) (plaintiff, whose only complaint was that agency action

19 would cause economic harm, asserted an interest outside NEPA's zone of interests).

20        Plaintiffs' passing mention of "environmental harm" in the Complaint, and as an

21 afterthought in their Motion is ancillary to their true purpose -- stopping a project they believe is

22 "unneeded." (*See* Ex. 1, 2 and 3). This is insufficient to establish that the injuries they allege fall

23 within NEPA's zone of interest. For a plaintiff's interest to fall within NEPA's zone of interests,

24 it "must be systematically, not fortuitously or accidentally aligned with those that Congress

25 sought to protect." *Cal. Forestry Ass'n v. Thomas*, 936 F.Supp. 13, 22 (D.D.C.1996) (quotation

26

27 ---
[12] To the extent there is any relevance to the fact that the hybrid buses will pass in front of his business, Macherione has made clear that the intent of this suit is to stop the project, or re-route it to a residential neighborhood, neither of which would alleviate its environmental effects. *See supra* at 8. In fact, such relief would have the opposite effect.

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 11

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1   marks omitted). Plaintiff's cursory mention of "adverse environmental impacts" in the Complaint

2   cannot hide that their true, stated interest is the project's cost, not any environmental impacts.

3              b.      **OMOT Does Not Have Organizational Standing**

4              "An association has standing to bring suit on behalf of its members when its members

5   would otherwise have standing to sue in their own right, the interests at stake are germane to the

6   organization's purpose and neither the claim asserted nor the relief requested requires the

7   participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

8   *Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). As discussed above, OMOT has failed to establish

9   that spokesperson Macherione has standing to sue in his own right. In addition, OMOT has not

10  demonstrated its purpose is germane to the environmental interest at stake in the WEEE. OMOT

11  is a "transit watchdog group" whose core purpose is not environmental. OMOT's primary

12  concern is that the money for the project "is not 'free' money. These are OUR tax dollars."[13] (*See*

13  Ex. 1 at 1). In fact, not one of the 13 specific concerns raised by OMOT regarding the WEEE

14  project on its website relates to the "adverse environmental impacts" it alleged in the Complaint.

15  (*Id.*) OMOT cannot recast itself for the purposes of establishing standing. *See Ranchers*

16  *Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d

17  1078, 1104 (9th Cir. 2005) (holding that a nonprofit association that described itself as a

19  representing members in "issues concerning international trade and marketing" could not

20  establish its NEPA interest were germane to its purpose); *Fitzgerald Reno, Inc. v. U.S. Dep't of*

21  *Transp.*, 60 F. App'x 53, 54 (9th Cir. 2003) (taxpayer organization whose purported

22  environmental interests were not germane to its members did not have standing to bring NEPA

23  claim). OMOT and Macherione clearly explained the purpose of their motion: "the intent of the

24  suit is to stop this unneeded project." (Ex. 2). Accordingly, Plaintiffs cannot demonstrate that the

25  environmental concerns are germane to its purpose, and it therefore, Plaintiffs do not have

26  standing to pursue this claim.

27  ---
[13] In turn, several environmental groups supported the WEEE, including the Oregon League of Conservation Voters (AR78687-88) and the 1000 Friends of Oregon. (AR77647) (comment of Rob Zako).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 12

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1  **B.**   **The Environmental Assessment For The WEEE Satisfies NEPA's Requirements**

2  **1.**   **Standard of Review**

3  "NEPA imposes only procedural requirements on federal agencies with a particular focus

4  on requiring agencies to undertake analyses of the environmental impact of their proposals and

5  actions." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756–57 (2004). Accordingly, a court's

6  "only role is to insure that the agency has taken a 'hard look' at the environmental consequences

7  of the proposed action." *Druid Hills Civic Ass'n v. Fed. Highway Admin.*, 772 F.2d 700, 709

8  (11th Cir. 1985). *See also Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1124 (9th

9  Cir. 2012). A "hard look" requires a "full and fair discussion of significant environmental

10 impacts." 40 C.F.R. § 1502.1. NEPA's goal is satisfied once this information is properly

11 disclosed. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

12 Under NEPA, 42 U.S.C. § 4321 *et seq.*, the central question is whether the agency

13 adequately considered relevant factors, disclosed the environmental impacts of its actions during

14 the decision making process and explained its determination. *Native Ecosystems Council v. U.S.*

15 *Forest Serv.*, 428 F.3d 1233, 1239 (9th Cir. 2005). Only if the agency's analysis of

16 environmental consequence is "arbitrary and capricious" or "contrary to the procedures required

17 by law" can the court conclude that the agency did not take a "hard look." *Inland Empire Pub.*

19 *Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 763 (9th Cir. 1996). Where, as in this case, a

20 court is reviewing an agency action primarily involving issues of fact requiring review of

21 "scientific judgments and technical analysis within the agency's expertise," the court "generally

22 must be at its most deferential."*Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1051 (9th

23 Cir. 2012) (quotation marks omitted). "The agency need not have reached the same conclusion

24 that the reviewing court would reach; the agency must merely have reached a conclusion that

25 rests on a rational basis."*City of Oxford v. FAA*, 428 F.3d 1346, 1352 (11th Cir. 2005).

26

27

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 13

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1    The EA for the WEEE was not arbitrary and capricious under NEPA. Plaintiffs'

2    opposition to the WEEE project and disagreement with the selection of West 6th/7[th] Avenue as

3    the LPA does not create a genuine issue of material fact, or establish a violation of NEPA.

4    **2.    The Purpose and Need Statement Reasonably Defined the WEEE's
         Objectives**

5

6    Plaintiffs allege that the agencies contrived a Purpose and Need Statement that

7    impermissibly narrowed the alternatives ultimately considered in the EA. (Dkt. No. 29 at 14-16).

8    A statement of purpose and need must "briefly specify the underlying purpose and need to which

9    the agency is responding in proposing the alternatives including the proposed action." 40 C.F.R.

10   § 1502.13. The scope of alternatives analyzed depends on the purpose and need specified in the

11   statement. *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. U.S. Forest*

12   *Serv.*, 689 F.3d 1060, 1069 (9th Cir. 2012). The agency need only evaluate alternatives that are

13   "reasonably related to the purposes of the project." *Id.* Courts evaluate a Statement of Purpose

14   and Need for reasonableness and give the agencies considerable discretion to define the project's

15   purpose and need. *Id.* at 1069-71.

16   Here, the adopted purpose of the transit agency "is to implement high-capacity public

17   transportation service, in the West 11th Corridor (east/west)…that is less hindered by congestion

19   and that provides efficient, effective, dependable, and visually appealing service throughout the

20   life of the project." (AR118850). The "touchstone" of the Court's inquiry when reviewing a

21   Purpose and Need Statement is whether the resulting alternatives analysis "fosters informed

22   decision-making and informed public participation." *See League of Wilderness*, 689 F.3d at

23   1071.[14] Here, far from eliminating any options or predetermining the outcome, after developing

24   the Statement, the agencies engaged in a six-year public process that studied scores of public

25   transit alternatives along the West 11th Avenue Corridor including a TSM alternative, as well as

26   multiple regular bus and BRT route alternatives. *See supra* at 1-8. LTD consistently used the

27   ───────────────
[14] The agencies went above and beyond the requirements of NEPA by even subjecting Statement of Purpose and Need to multiple the rounds of public comment and input.

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 14

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1    eight criteria set forth in that Statement, (*see supra* at 3), to evaluate each alternative. *See supra*

2    at 1-8. No alternative was eliminated without detailed study and public participation.

3    Consistent with their opposition to the spending of tax dollars on the WEEE generally,

4    Plaintiffs argue that the transit agencies' adopted purpose of utilizing "high-capacity

5    transportation service" to solve local transportation issues impermissibly led to the elimination of

6    the TSM alternative -- a bandage of small low-cost improvements to the existing system. (Dkt.

7    No. 29 at 15). Importantly, Plaintiffs omit the fact that the TSM alternative was considered

8    throughout the various stages of the WEEE study, and included among the final twelve

9    alternatives extensively studied in the published Alternatives Analysis ("AA"). As detailed in the

10   AA, the TSM alternative was properly eliminated at that point because the high operating cost

11   per trip made it incompatible with the WEEE's goals. (AR118868). *See Native Ecosystems

12   Council*, 428 F.3d at 1248 ("it makes no sense" for agencies "to consider alternatives that do not

13   promote the goal" or the "purpose" that agency is trying to accomplish) (internal quotation marks

14   omitted). In any event, even if LTD had narrowed the statement to allow consideration of only

15   BRT alternatives, the record makes clear that LTD considered more than 50 BRT alternatives

16   during the six-year study. *See HonoluluTraffic.com v. FTA*, No. 13-15277, slip op. at 16-18 (9th

17   Cir. Feb. 18, 2014) (a public transit project's purpose "to provide high-capacity transit in the

19   highly congested east-west transportation corridor" was reasonable because it was broad enough

20   to allow the agency to assess various routing options); *Westlands Water Dist. v. U.S. Dep't of

21   Interior*, 376 F.3d 853, 866-67 (9th Cir. 2004) (agency that limited its purpose and need to

22   consideration of only one method was not impermissibly narrow).[15] The agencies are entitled to

23   _____

[15] The cases Plaintiffs rely on are distinguishable. In *National Parks & Conservation Assn. v. Bureau of Land

24   Mgmt.*, 606 F.3d 1058 (9th Cir. 2009), the Court held that a statement that allowed for the consideration of only
     alternatives that would satisfy the business needs of a private corporation to the exclusion of alternatives that would

25   satisfy the public need, but eliminate the corporation's interest, was too narrowly drawn. That is plainly not the
     situation here. Indeed, to the extent that private interests are attempting to assert themselves over the public need

26   here it is Plaintiffs' private interest in pushing their preferred alternative over the LPA. Similarly, the 7th Circuit in
     *Simmons v. U.S. Army Corps of Engineers*, 120 F.3d 664 (7th Cir. 1997), held that a purpose and need statement that

27   by its very definition only allowed one alternative at the start of the process was inadequate. Here, even if LTD had
     only studied BRT for the WEEE, which it did not, it is undisputed that it studied 56 BRT alternatives. (AR118831).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 15

1  deference for this lengthy, detailed, public process.

2      Moreover, Plaintiffs' contention that there is no "need" for the WEEE (based on a three-

3  year old news article about LTD's budget cuts) is without merit.[16] (Dkt. No. 29 at 17). Similarly

4  without merit, is Plaintiff's cherry-picking of one need -- to address present traffic congestion --

5  among nine detailed in the Statement. Need can be interpreted broadly, and the agency has

6  discretion to determine which public needs it will consider. *Alaska Survival v. Surface Transp.*

7  *Bd.*, 705 F.3d 1073, 1085 (9th Cir. 2013). It is appropriate for the need statement to include the

8  region's growth projections. *See id.* at 1086 (finding adequate a statement of need that the

9  proposed action will serve "as a catalyst for economic development" in the future). As detailed in

10  the Statement, the projected growth in population and employment along the Corridor will

11  increase demand and operating expenses for the current public transit system that must be met

12  while protecting the wetlands, rare plants, and animals along the Corridor. (AR118850-51.) For

13  these reasons, the two thirty-year old cases from other circuits that Plaintiff relies on to allege

14  that there was no determination of need for the WEEE are unavailing. (Dkt. No. 29 at 17).

15      The Statement for the WEEE was not drafted to predetermine the outcome of the

16  alternatives analysis. LTD worked *with* local agencies, and the public to develop it over several

17  months, and it guided the subsequent informed public decisionmaking process. The Ninth Circuit

19  has recognized that engaging in precisely this type of meticulous public decision making

20  demonstrates the agency "thought hard" about the purpose and need for the project and resulted

21  in an adequate Statement. *See Ala. Survival*, 705 F.3d at 1085.

22      **3.      Consideration of the LPA and No-Build Alternative in the EA Was Proper**

23      Plaintiffs argue that the EA is arbitrary and capricious because it failed to choose

24  Plaintiffs' preferred alternative -- the West 13th Avenue-West 11th Avenue alignment. (Dkt. No.

25

26  [16] Contrary to Plaintiffs' mischaracterization of the article, it does not report that the Line 30 was taken out of
service due to low ridership. Instead, the article reports that service for several regular bus lines was cut in April

27  2010 as a result of a budget shortfall facing LTD because of shrinking payroll taxes. Importantly, the article makes
clear that many of the affected regular bus routes were now serviced by the fully operational Gateway EmX line.

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 16

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1    29 at 10-14).[17] Plaintiffs ignore the year-long process that yielded thousands of public comments

2    on the Draft AA, and the study by the Joint LPA Committee, that ultimately resulted in a

3    mitigated version of the West 6th-West 7th Avenue alternative being identified as the LPA.

4         Following this public process, the EA for the WEEE properly considered two remaining

5    alternatives: a No-Build alternative and the LPA.[18] The Ninth Circuit holds that under "the less

6    stringent requirements for an EA," consideration of two alternatives -- a no-action alternative and

7    a LPA -- is sufficient under NEPA. *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1023

8    (9th Cir. 2012). NEPA's "statutory and regulatory requirements … do[ ] not dictate the minimum

9    number of alternatives that an agency must consider." *Native Ecosystems Council*, 428 F.3d at

10   1233 (upholding an EA that considered only a no-action alternative and a preferred alternative).

11   Specifically, the Ninth Circuit has held that consideration of appropriate alternatives in an EA

12   requires only analysis of a no-action alternative and a preferred alternative. *Id.*; *Earth Island

13   Institute*, 697 F.3d 1010. *See also North Idaho Community Action Network v. U.S. Dep't of

14   Transp.*, 545 F.3d 1147, 11543-54 (9th Cir.) (holding that an EA that "briefly discussed" a no

15   action alternative and a preferred alternative was sufficient under NEPA).

16        In any event, the EA cannot be considered in a vacuum. The EA built on the six years of

17   public alternatives analysis conducted before it, as discussed above. *See supra* at 1-8. NEPA's

19   requirements are met "[s]o long as 'all reasonable alternatives' have been considered and an

20   appropriate explanation is provided as to why an alternative was eliminated." *Native Ecosystems

21   Council*, 428 F.3d at 1246. Scores of alternatives were considered for the WEEE during the

22   lengthy study, and ultimately twelve, including Plaintiffs' preferred alternative -- the West 13th

23   Avenue-West 11th Avenue alternative -- were studied in detail in the AA.  Far from failing to

24

25   [17] Notably, Plaintiffs do not contend that any of the other routes eliminated during this process, including all West 6th/7th Avenues-West 7th Place alternatives should have been considered in the EA. This further demonstrates that this case is about Plaintiffs' preferred alternative and not about the environmental effects of the WEEE.

26

27   [18] The EA dedicated a chapter to discussing all of the alternatives considered throughout the study, and explaining the analysis process. (AR118857-95). Moreover, the Final Alternatives Analysis, Technical Reports, and various other project documents were attached to the EA. (AR118813).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 17

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1    give "full consideration" to Plaintiffs' preferred alternative, as they have alleged, the record

2    demonstrates the careful balancing and study that went into the elimination of that route and

3    chronicles the changes that ultimately made the mitigated West 6th Avenue- West 7th Avenue

4    alternative the best one from an environmental standpoint. *See HonoluluTraffic.com*, No. 13-

5    15277, slip op. at 19 (an agency does not violate NEPA by not expressly considering in an EIS

6    alternatives that had previously been ruled out during the screening process). Specifically, the

7    LPA avoided wetlands, Amazon Creek and the adjacent trail, lessened the need for street

8    improvements that would impact historic properties, required less property acquisition,

9    minimized adverse impacts to established residential neighborhoods, and saved trees.

10   (AR118748). *See also supra* at 4-7. This careful study rebuts the "obvious viability" of Plaintiff's

11   preferred alternative and was far more complex than Plaintiffs suggestion that the agencies

12   should simply draw a "straight line". (Dkt. No. 29 at 5, 11).

13        For these reasons, the EA for the WEEE is distinguishable from the EA before the court

14   in *Western Watersheds Project v. Abbey*, 719 F.3d 1035 (9th Cir. 2013) -- the lone authority

15   Plaintiffs rely on. In that case, all alternatives the federal agency considered in the EA, including

16   the no-action alternative, would result in the proposed action being approved. *Id.* at 1051. Here,

17   far from considering alternatives that would all lead to the same result, the alternatives in the EA

19   considered two options -- implementing BRT service to serve current and future public transit

20   needs, or taking no action to remedy the congestion and lack of transit options.

21        Neither does Jarrette Walker's report undermine the process by which Plaintiffs'

22   preferred alternative was eliminated. (Dkt. No. 29 at 13). The report was commissioned by the

23   new General Manager for LTD -- who took office near the end of the WEEE study -- as part of

24   his due diligence. (AR115273-74). The report was based on an analysis of existing data, and

25   some interviews, and concluded that the LPA was a reasonable alternative. *Id*. It was not the

26   "devastating critique" Plaintiffs contend. (Dkt. No. 29 at 14). In any event, the report's

27   conclusion is immaterial. *See Edwardsen v. U.S. Dep't of Interior*, 268 F.3d 781, 786 (9th Cir.

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 18

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1   2001) (the fact that an agency's approach has been critiqued does not render an EIS arbitrary and

2   capricious); *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1359 (9th Cir. 1994)

3   (it is not for the court to resolve disagreements among experts under NEPA). Thus, NEPA does

4   not require unanimity of opinion. What is important is that the report was considered by the

5   agencies involved and made available for the public's review, which it undeniably was.

6   (AR115274). *See Robertson*, 490 U.S. at 349 (NEPA's goal is satisfied once information

7   disclosed to the public). Plaintiffs' arguments to the contrary omit the comments about the report

8   they submitted with their comments on the EA. (AR79500-64).

9        As the foregoing demonstrates, neither the process of evaluating alternatives that resulted

10  in the selection of the West 6th/7th Avenues-West 11th Avenue alternative as the LPA, nor the

11  consideration of the LPA and No-Build alternatives in the EA, was arbitrary and capricious.

12       **4.   Mitigation Of Environmental Impacts in EA Supports The FONSI**

13       Plaintiffs allege that the temporary and *de minimis* environmental impacts disclosed in

14  the EA (parking, noise and vibration, geology and seismic activity, and wetlands impacts) are

15  significant enough to warrant preparation of a full blown EIS. (Dkt. No. 29 at 17-20).  Merely

16  identifying some information favorable to their position, as Plaintiffs do here, does not raise a

17  substantial question about the significance of the project's environmental effects. *Native*

18  *Ecosystems Council,* 428 F.3d at 1240 ("We decline to interpret NEPA as requiring the

20  preparation of an EIS any time that a federal agency discloses adverse impacts...or acknowledges

21  information favorable to a party that would prefer a different outcome.").  In addition, Plaintiffs

22  ignore the fact that the EA includes binding mitigation measures that specifically address these

23  issues and the obvious fact that the overall impact of this green transit project is a net gain for the

24  environment. (AR115284-301).

25       NEPA does not require an agency to develop any particular mitigation measures. *Pac.*

26  *Coast Fed'n of Fishermen's Associations v. Blank*, 693 F.3d 1084, 1103-04 (9th Cir. 2012).

27  Moreover, the agency is "not required to develop a complete mitigation plan detailing the

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 19

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1   'precise nature of the mitigation measures." *Id.* at 1103. An agency is merely required to develop

2   potential mitigation measures "to a reasonable degree." *Tillamook Cnty. v. U.S. Army Corps of*

3   *Eng'rs*, 288 F.3d 1140, 1144 (9th Cir.2002). The proposed measures must be discussed in

4   sufficient detail to ensure the environmental consequences are fairly evaluated, and to allow an

5   assessment of whether the measures can be effective. *See Pac. Coast Fed'n of Fishermen's*

6   *Associations*, 693 F.3d at 1103-04.

7      Here the lengthy record establishes that the agencies took a "hard look" at the four issues

8   Plaintiffs cite to and worked to develop binding mitigation measures to reduce the impacts below

9   the level of significance.

10   • Parking Impacts: The mitigation measures the EA details, including restriping,
11     relocating affected driveways and compensating affected owners for the loss,
       would reduce the lost off-street parking spaces from 72 to a mere 18.
12     (AR118917). "[O]n-street parking utilization in the Corridor is below a level that
       would require mitigation." (AR118835).

13   • Noise and Vibration Impacts: Contrary to Plaintiffs contention about the lack of
14     specificity of the measures, (Dkt. No. 29 at 20), the EA stated that the project
       specifications would include five specific noise abatement measures, and employ
15     a construction communications liaison to address specific problems that may
       arise. (AR118945-46). Importantly, the EA notes that "[u]nder the No-Build
16     Alternative, noise levels throughout the project study area would continue to
       increase as traffic volumes along the established truck routes increase," and that
17     this level would exceed ODOT's Noise Abatement Criteria. (AR118941).

19   • Geology and Seismic Activity Impacts: Not only is the LPA not anticipated to
       create adverse impacts in this area, but it "could also create benefits, including
20     stabilization of the Amazon Channel banks." (AR118978). The EA noted
       geotechnical studies would be required to create the design appropriate for the
21     area's subsurface conditions. (AR118979. *See* AR0118977-79). Plaintiffs'
       argument that somehow this study must be conducted before the project is even
22     funded, (Dkt. No. 29 at 20), defies logic.

23   • Wetlands Impacts: It is a gross misstatement to argue, as Plaintiffs do, that the EA
       "fails to provide any specifics" concerning mitigation of impacts to wetlands.
24     (Dkt. No. 29 at 20). The WEEE would impact 0.048 acre of wetland.
       (AR118994).The EA identifies eleven mitigation measures for this small area,
25     including planning native trees and shrubs, and removing non-native invasive
       plant species from wetlands. (AR118996. *See also* AR118988-96).

26      In short, the EA identifies potential mitigation measures to the reasonable degree NEPA

27   requires. Plaintiffs exaggerate the amount of harm from the project, (*i.e.,* operating hybrid buses

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 20

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1    on existing roads and implementing numerous traffic improvements), and undervalue the

2    required mitigation measures.  Contrary to Plaintiffs' argument that the mitigation measures are

3    "unenforceable" because of the "qualifying" language used to describe them, (Dkt. No. 29 at 18-

4    19), the FONSI specifically states that any FTA funding is conditioned upon LTD's compliance

5    with the mitigation commitments described in the EA. (AR115284-AR115301). *See Pac. Coast*

6    *Fed'n of Fishermen's Associations*, 693 F.3d at 1103 (mitigation plan need not "be legally

7    enforceable, funded or even in final form to comply with NEPA's procedural requirements.").[19]

8           In these ways, the EA for the WEEE is distinguishable from the authority Plaintiffs cite.

9    Specifically, unlike with respect to cruise ships being allowed in Glacier Bay National Park,

10   there is no uncertainty about any environmental effects here, including concerning the 0.048 acre

11   of wetlands potentially affected by the WEEE. *See National Parks & Conservation Ass'n v.*

12   *Babbitt*, 241 F.3d 722, 734 (9th Cir. 2001). Moreover, unlike in *Neighbors of Cuddy Mountain v.*

13   *U.S. Forest Serv.*, here there is no question that the mitigation measures specifically address the

14   impacts of the WEEE. 137 F.3d 1372, 1381 (9th Cir. 1998) (rejecting the U.S. Forest Service's

15   generalized and vague mitigation references where the measures did not even concern the creeks

16   actually affected by the proposed action). Finally, much in contrast to the mitigation measures in

17   *Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146, 1151 (9th Cir. 1998), the identification of the

19   impacts of the WEEE and enforceable mitigation measures for those impacts is supported by

20   hundreds of pages of analytical data, made available to the agencies involved and the public, and

21   attached to the EA. *See supra* at. 3 n. 3.

22

23

24   [19] This language requiring the implementation of the mitigation measures detailed in the EA, along with the
extensive public process during which these mitigation measures were developed follows the Council on

25   Environmental Quality's most recent guidance concerning the development of mitigation measures, and reliance
upon them to issue FONSIs. *See* Final Guidance for Federal Departments and Agencies on the Appropriate Use of
Mitigation and Monitoring and Clarifying the Appropriate Use of Mitigated Findings of No Significant Impact, 76

26   Fed. Reg. 3843-01 (Jan. 21, 2011) (to be codified at 40 C.F.R Parts 1500, 1501, 1502, 1505, 1506, 1507, and 1508).

27   Specifically, the mitigation measures are incorporated into the WEEE's design, the FTA reviewed carefully and
adopted those measures in the EA and FONSI, and FTA has ensured the mitigation commitments will be
implemented by conditioning funding on compliance those measures. *Id.* at 3847-48.

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 21

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1       **5.      EA Properly Considered All Effects**

2           Finally, Plaintiffs claim that the EA failed to address the cumulative impacts the WEEE

3   will have on future traffic along the West $6^{th}/7^{th}$ Avenue corridor, and that the WEEE conflicts

4   with the future land use plan for the City. (Dkt. No. 29 at 21-25). These are arguments are

5   without merit. NEPA requires an agency to consider the cumulative impacts of a project. 40

6   C.F.R. § 1508.27(b)(7). These are the impacts "on the environment which results from the

7   incremental impact of the action when added to other past, present, and reasonably foreseeable

8   future actions." 40 C.F.R. § 1508.7. The present and reasonably foreseeable future traffic impacts

9   of the WEEE on traffic along the WEEE route were studied in detail and discussed in the EA.

10  (*See* AR119033-84). Similarly, the nodal development the WEEE will support has been

11  recognized in the city's land used plans as a future goal. (AR119027). In sum, neither of these

12  random objections demonstrates that the EA was arbitrary and capricious.[20]

13  ///

14  ///

15  ///

16  ///

17  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  _____

26  [20] Plaintiffs also argue that the EA fails to make meaningful consideration of the impacts of the WEEE on minority
populations. The Ninth Circuit does not allow a cause of action under Executive Order 12898. *Morongo Bank of
Mission Indians v. FAA*, 161 F.3d 569, 575 (9th Cir.1988). However, even if judicial review were available under

27  NEPA and the APA, the agencies here not only concluded that the minority population and low income populations
would not be disproportionately affected by the Project, but that they would greatly benefit. (AR119122-25).

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 22

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300

1

IV.  **CONCLUSION**

2        For these reasons, Defendant Intervenor Lane Transit District respectfully requests that

3   the Court deny Plaintiffs' Motion for Summary Judgment and grant LTD's Motion for Summary

4   Judgment.

5

6        DATED this 28th day of February, 2014.

7                                    HOLLAND & KNIGHT LLP

8                                    By:  s/ Louis A. Santiago
                                          LOUIS A. SANTIAGO
9                                         WSBA #23682
                                          2300 U.S. Bancorp Tower
10                                        111 SW Fifth Avenue
                                          Portland, OR 97204
11                                        Telephone:  (503) 243-2300
                                          Facsimile:  (503) 241-8014
12                                        Email: serve.las@hklaw.com
                                     Of Attorneys for Defendant Intervenor Lane
13                                   Transit District

14                                   Of Counsel for Lane Transit District:
                                          Rafe Petersen
15                                        Jeffrey Boothe
                                          Lawrence Liebesman
16                                        Adrianna C. Rodriguez
                                          HOLLAND & KNIGHT LLP
17                                        800 17th Street, N.W.
                                          Suite 1100
19                                        Washington, D.C. 20006
                                          Telephone: (202) 955-3000
20                                        Email:  rafe.petersen@hklaw.com

21

22

23

24

25

26

27

LANE TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT (Case No. 2:13-cv-01004-TSZ) - Page 23

1

<u>CERTIFICATE OF SERVICE</u>

2

3      I hereby certify that I served the foregoing DEFENDANT INTERVENOR LANE

4   TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY

5   JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT on the following persons

6   by CM/ECF electronically mailed notice from the Court on the date set forth below:

7   Kristina Silja Bennard                    Kathryn Kusske Floyd
    Yarmuth Wilsdon PLLC                       Venable LLP
8   818 Stewart Street, Suite 1400            575 7th Street NW
    Seattle, WA 98101                         Washington, DC 20004
9   Tel.:  (206) 516-3800                     Tel.:  (202) 344-4696
    Email:  kbennard@yarmuth.com              Email:  kkfloyd@venable.com
10  Attorneys for Plaintiff
    Our Money Our Transit                     Jay C. Johnson
11                                            Venable LLP
                                              575 7th Street NW
12  Brian C. Kipnis                           Washington, DC 20004
    US Attorney's Office                      Tel.:  (202) 344-4698
13  700 Stewart Street, Suite 5220            Email:  jcjohnson@venable.com
    Seattle, WA 98101-1271
14  Tel.:  (206) 553-7970                     Margaret K. Kuhn
    Email:  Brian.Kipnis@usdoj.gov            Venable LLP
15  Attorney for Defendants Federal Transit   575 7th Street NW
    Administration, Peter M. Rogoff, and      Washington, DC 20004
16  Richard F. Krochalis                      Tel.:  (202) 344-4791
                                              Email:  mkkuhn@venable.com
17
                                              Pro Hac Vice Attorneys for Plaintiff Our
19                                            Money Our Transit

20

21

22      DATED this 28th day of February, 2014.

23

24                          s/ Louis A. Santiago
                            LOUIS A. SANTIAGO

25

26

27

CERTIFICATE OF SERVICE (Case No. 2:13-cv-01004-TSZ)  - Page 1

**HOLLAND & KNIGHT LLP**
111 S.W. Fifth Avenue
2300 U.S. Bancorp Tower
Portland, Oregon  97204
Telephone: 503.243.2300